# EXHIBIT 1

**Document List**

**Index #  653203/2021**    Created on:05/26/2021 04:12 PM

Case Caption:    **SFMB MANAGEMENT, LLC v. STARR SURPLUS LINES INSURANCE COMPANY**

Judge Name:

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|---------------------------|--------|---------------|----------|
| 1 | SUMMONS | Processed | 05/14/2021 | Crawford, K. |
| 2 | COMPLAINT | Processed | 05/14/2021 | Crawford, K. |
| 3 | EXHIBIT(S) Policy | Processed | 05/14/2021 | Crawford, K. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SFMB MANAGEMENT, LLC, | Index No. _____ |
| Plaintiff, | Plaintiff designates New York County as place of trial. |
| v. | **SUMMONS** |
| STARR SURPLUS LINES INSURANCE COMPANY, | The basis of venue is defendant's principal place of business. Defendant has an office at 399 Park Avenue, 8th Floor, New York, NY 10022. |
| Defendant. | |

To the above named Defendant,

YOU ARE HEREBY SUMMONED to answer the complaint in this action in the Supreme Court of the State of New York, County of New York, at the office of said court of **60 Centre Street, New York, New York 10007**, and to serve a copy of the answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, a judgment will be taken against you by default for the relief demanded in the complaint.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in this complaint.

Dated: May 14, 2021

Respectfully submitted,

HECHT PARTNERS LLP

Kathryn Lee Boyd
*Attorney for plaintiff*
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 851-6821
lboyd@hechtpartners.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SFMB MANAGEMENT, LLC,

     Plaintiff,

     v.

STARR SURPLUS LINES INSURANCE
COMPANY,

     Defendant.

Index No. _____

## COMPLAINT

Plaintiff SFMB Management, LLC ("Plaintiff" or "SunPubs") brings this action against Defendant Starr Surplus Lines Insurance Company ("Starr" or "Defendant"), and in support thereof states the following:

## I. NATURE OF THE ACTION

1. This action seeks to rectify the wrongful denial of business interruption insurance coverage to Plaintiff, the owner and operator of nine full-service bars and restaurants in and around the Tampa, Florida area. Plaintiff has been left out in the cold by its insurer during the greatest business interruption in living memory: the COVID-19 pandemic, which threatens the future of SunPubs and the restaurant industry as a whole.

2. To protect its businesses in the event it suddenly had to suspend operations for reasons outside of its control, or in order to prevent further property damage, SunPubs purchased insurance coverage from Defendant Starr Surplus Lines Insurance Company ("Starr").

3. SunPubs was forced to reduce or suspend operations at all of its locations due to the presence of SARS-CoV-2, the novel coronavirus that causes COVID-19, at its restaurant premises. All of SunPubs' locations are in Florida, a major community-

transmission hotspot.  It made a claim on its business interruption coverage with Starr for these losses, but was rebuffed.

4.        Instead of providing the support it bargained for, Defendant Starr chose to issue blanket denials to all of its insureds affected by the virus pandemic.  It did so without conducting any investigation into whether the insured property suffered physical loss of or damage to the premises by the introduction of COVID-19 droplets or aerosols.

5.        Starr had no excuse for its intransigence. Unlike many policies that provide Business Income ("Business Interruption") coverage, Plaintiff's Policy lacks a "Communicable Disease" Exclusion in the Policy in effect when the COVID-19 Pandemic losses began. It later added such an exclusion to a renewal policy, confirming that the policy under which this claim was made does not exclude losses owing to the virus pandemic.

## II.        JURISDICTION AND VENUE

6.        This Court has jurisdiction over this action because Starr has its principal place of business in New York and conducts business regularly in New York, and because the Policy specifies that actions thereon shall be brought in this Court.

7.        Venue is proper in New York County because it is the county in which Starr's principal office is located, and because a substantial part of the events or omissions giving rise to the claim occurred in New York County.

## III.        PARTIES

8.        Plaintiff SFMB Management, LLC is a Florida limited liability company with its principal place of business in Tampa Bay, Florida. Plaintiff owns and operates nine restaurant locations in the Tampa Bay area.

2

Case 1:21-cv-05041    Document 1-1    Filed 06/08/21    Page 6 of 126

9. Defendant Starr Surplus Lines Insurance Company is a Texas corporation with its principal place of business at 399 Park Avenue, 8th Floor, New York, NY 10022.

## IV. FACTS

### A. Transmission of the Coronavirus into the U.S. and Florida

10. Severe Acute Respiratory Syndrome Coronavirus 2, ("SARS-CoV-2" or the "coronavirus"), which causes coronavirus disease 19 ("COVID-19"), the respiratory disease responsible for the COVID-19 pandemic, began infecting humans in China in December 2019.

11. COVID-19 is not only highly contagious, but also deadly. More than 32 million Americans have had confirmed cases of COVID-19, and more than 580,000 have died according to the Centers for Disease Control and Prevention ("CDC").[1]

12. On March 11, 2020, the World Health Organization ("WHO"), "deeply concerned both by the alarming levels of spread and severity, and by the alarming levels of inaction" by governments, characterized COVID-19 as a pandemic.[2]

13. The pandemic quickly spread around the world and soon reached Florida.

14. Plaintiff operates locations in a least three counties (Hillsborough, Pinellas and Manatee) in and around Tampa Bay. In Hillsborough County, more than 138,000 COVID-19 cases have been reported.[3] In Pinellas County, more than 78,000 COVID-19

---

[1] COVID Data Tracker, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last checked May 13, 2021).

[2] Tedros Adhanom, WHO Director-General's opening remarks at the media briefing on COVID-19, World Health Organization (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[3] Hillsborough County COVID-19 Data Dashboard, https://www.hillsboroughcounty.org/residents/public-safety/emergency-management/stay-safe/covid-19-dashboard (last checked May 13, 2020).

3

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 7 of 126

cases have been reported.[4] In Manatee County, more than 39,000 COVID-19 cases have

been reported.[5] Even in early March 2020, there were cases of COVID-19 present in the

Tampa Bay area.[6]

     15.    In the United States, federal and state governments were slow to act to stem

the spread of infection. Despite evidence that the novel coronavirus was rapidly spreading

in the United States and other parts of the world, many federal and state officials

downplayed the risk to the United States. By mid-March 2020, however, it became clear

that drastic action had to be taken to slow down the rate of infections.

     16.    The presence of COVID-19 has caused civil authorities throughout the

country to issue orders requiring the suspension of business at a wide range of

establishments, including civil authorities with jurisdiction over Plaintiff's businesses (the

"Closure Orders"). Further, the presence of COVID-19 has been found at Plaintiff's

various restaurants causing physical harm to the property and triggering coverage under

the various endorsements.

**B.    SARS-CoV-2 Spreads Through Droplets, Which Accumulate On Surfaces**

17.    According to the WHO:

"Transmission of SARS-CoV-2 can occur through direct, indirect, or close contact
with infected people through infected secretions such as saliva and respiratory
secretions or their respiratory droplets, which are expelled when an infected person
coughs, sneezes, talks or sings.

---

[4] Monitoring COVID-19 in Pinellas County, https://covid19.pinellascounty.org/dashboard/
#cases (last checked May 13, 2021).

[5] Manatee County Coronavirus (COVID-19) Information, https://www.mymanatee.org/
departments/public_safety/coronavirus_information (last checked May 13, 2021).

[6] Lawrence Mower, Florida's third coronavirus case is found in Hillsborough, Tampa Bay
Times (Mar. 3, 2020), https://www.tampabay.com/news/health/2020/03/03/third-
coronavirus-case-found-in-florida-is-hillsborough-patients-sister/.

Respiratory droplet transmission can occur when a person is in close contact with an infected person who has respiratory symptoms (e.g. coughing or sneezing) or who is talking or singing; in these circumstances, respiratory droplets that include virus can reach the mouth, nose or eyes of a susceptible person and can result in infection."[7]

18.     Infected individuals can be completely asymptomatic, and thus unaware that they may be spreading the virus through the mere touching of objects and surfaces. Indeed, studies have estimated that over 40% of infected individuals may never develop any symptoms.[8]  But even individuals who appear healthy and present no identifiable symptoms of the disease will still spread the virus by merely breathing, speaking, or touching objects and surfaces.

19.     The CDC has acknowledged that the coronavirus and COVID-19 can spread through airborne transmission. Floating respiratory droplets, called aerosols, contain the live coronavirus. The coronavirus lives in "small droplets and particles that can linger in the air for minutes to hours," and can thus infect persons who are "further than 6 feet away" even "after that person has left the space."

20.     Unlike larger droplets, which quickly fall to the ground or nearby surfaces, aerosols behave like smoke. After being expelled, they disperse through the air, to be inhaled by anyone present on the property, circulating through air flow and spreading the virus. Each coronavirus virion is a physical object with a material existence that can survive outside the human body in viral fluid particles that, like the virion itself, cannot be seen by

---

[7] https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions.
[8] Asymptomatic COVlD-19 Cases May Be More Common Than Suspected (May 27, 2020), https://www.nbcnews.com/health/health-news/asymptomatic-covid-19-cases-may-be-more-common-suspected-n1215481.

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 9 of 126

the naked eye. As with other small particles like dust, the physical viruses linger in the air, traveling on air currents until they attach to an object or other surface.

21.     According to experts, buildings and properties accumulate the airborne virus indoors, which plays a significant role in community transmission.[9]

22.     Outbreak reports related to indoor crowded spaces have suggested the possibility that aerosol transmission, combined with droplet transmission in restaurants, leads to "superspreader" type events.[10]

23.     The WHO and the CDC have recognized the tendency of the coronavirus to attach to objects and surfaces, "such as tables, doorknobs, and handrails."[11] The CDC has confirmed that the coronavirus "may remain viable for hours to days on surfaces made from a variety of materials."[12] Numerous other scientific studies have discovered that the coronavirus can survive and persist on surfaces and buildings for nearly a month.[13] Accordingly, the CDC has recognized that the coronavirus and COVID-19 can spread

---

[9] Apoorva Mandavilli, 'A Smoking Gun': Infectious Coronavirus Retrieved From Hospital Air, New York Times (Oct. 5, 2020), https://www.nytimes.com/2020/08/11/ health/coronavirusaerosolsindoors.html.

[10] https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implicationsfor-infection-prevention-precautions *citing* Lu J, Gu J, Li K, Xu C, Su W, Lai Z, *et al*., Early Release-COVID-19 Outbreak Associated with Air Conditioning in Restaurant, Guangzhou, China, 2020. Emerg Infect Dis. 2020; 26(7):1628-1631.

[11] Q&A on coronaviruses (COVID-19), World Health Organization (Oct. 20, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answershub/q-adetail/ coronavirus-disease-covid-19-how-is-it-transmitted.

[12] Cleaning and Disinfection for Households, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection. html (last updated July 17, 2020).

[13] Jessie Hellman, COVID-19 virus can survive on some surfaces for nearly a month in lab conditions, The Hill (Oct. 12, 2020), https://thehill.com/homenews/media/520647-covid-19-virus-can-survive-onsome-surfaces-for-nearly-a-month-in-lab; *see also* Public Health Responses to COVID-19 Outbreaks on Cruise Ships—Worldwide, February–March 2020, Centers for Disease Control and Prevention (Mar. 27, 2020), https://www.cdc.gov/mmwr/ volumes/69/wr/mm6912e3.htm.

6

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 10 of 126

through contact with surfaces and objects, and thus recommended measures to "routinely

clean and disinfect frequently touched surfaces."[14]

24.     Recognizing the ability of the coronavirus to attach to surfaces,

biotechnology companies have been able to detect the virus on surfaces.[15]

25.     Studies suggest that the SARS-CoV-2 virus can remain on smooth surfaces

for at least 28 days.[16] During those 28 days, new virus particles may be introduced to a

surface. Based on these factors, and the penetration of SARS-CoV-2 in the U.S. and

specifically in Florida, it is more likely than not that, at any given time during the COVID-

19 viral pandemic that reached the U.S. in full force in or before March 2020, any restaurant

in Florida has SARS-CoV-2 particles on its surfaces.

26.     The persistent presence of this deadly, airborne live coronavirus on surfaces

and in the air renders buildings and properties damaged, lost, unsafe, unfit, and

uninhabitable for occupancy or use. Without substantial physical alterations, system

changes to facilities, and new protocols for air circulation, disinfection, and disease

prevention, an infected property cannot remain open to the public. Cleaning of surfaces

alone is insufficient. The scientific community has confirmed that coronavirus and

COVID-19 alter the conditions of properties and buildings such that the premises are no

longer safe and habitable for normal use.

---

[14] How COVID-19 Spreads, Centers for Disease Control and Prevention, https://www.cdc.
gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last updated
Oct. 28, 2020).
[15] Dr. Jay Bhatt & Kaitlyn Folmer, Testing buildings may become added weapon in
coronavirus reopenings, ABC News (July 24, 2020), https://abcnews.go.com/GMA/News/
testing-buildingsaddedweapon-coronavirus-reopenings/story?id=71956136.
[16] Chin et al., Stability of SARS-CoV-2 in different environmental conditions, the Lancet,
Vol. 1, Issue 1, e10, May 01, 2020, *see* https://www.thelancet.com/journals/lanmic/article/
PIIS2666-5247(20)30003-3/fulltext; *see also e.g.*, https://www.bbc.com/news/health-
54500673.

7

Case 1:21-cv-05041 Document 1-1 Filed 06/08/21 Page 11 of 126

27.     In this regard, the novel coronavirus causes direct physical loss and damage to buildings and properties. The coronavirus, which has a material existence and is contained in respiratory droplets, adheres to, attaches to, and alters the surfaces of the property and surfaces upon which these physical droplets land, and physically changes these once safe surfaces to "fomites." Fomites are objects, previously safe to touch, that now serve as agents and mechanisms for transmissions of deadly, infectious viruses and diseases.[17]

28.     Thus, the coronavirus and COVID-19 physically change properties and surfaces such that contact with these properties and surfaces, which previously would have been safe, is now deadly and dangerous. This constitutes real and severe damage to and loss of the properties. The coronavirus and COVID-19 also cause direct physical loss and damage to properties and buildings by altering the physical condition of air in buildings from safe and breathable, to unsafe and dangerous. The coronavirus and COVID-19 are able to live in aerosols and accumulate in buildings, which render the properties and premises damaged, lost, unsafe, and unfit for occupancy.

### C.     The Florida Closure Orders

29.     On March 17, 2020, Florida Governor Ron DeSantis issued Executive Order No. 20-68, restricting bars from selling alcohol and ordering every restaurant to limit its occupancy to 50% of current building capacity.[18]

---

[17] Transmission of SARS-CoV-2: implications for infection prevention precautions, World Health Organization (July 9, 2020), https://www.who.int/newsroom/commentaries/detail/transmission-of-sarscov-2-implications-for-infection-preventionprecautions.
[18] State of Florida, Office of the Governor, Executive Order Number 20-68 (March 17, 2020), https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-68.pdf.

8

30. On March 17, 2020, Hillsborough County issued a civil authority order (Administrator Order Number 20-05) limiting restaurant services to take-out, delivery, or drive-through only.[19] This affected two of SunPubs' nine locations.

31. On March 20, 2020, Governor DeSantis issued Executive Order Number 20-71, requiring the suspension of alcohol sales for on-premises consumption and the suspension of all dine-in eating at restaurants.[20]

32. On March 25, 2020, the Pinellas County Commission unanimously ordered residents to stay home, in part because "there is reason to believe that COVID-19 is spread amongst the population by various means of exposure, including the propensity to spread person to person and the propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and **causing increased infections to persons, property loss and damage in certain circumstances**." (emphasis added).[21] Restaurant limitations imposed by the Governor's orders were adopted by the County in its order. Six of SunPubs' locations are in Pinellas county.

33. On May 3, 2021 Governor DeSantis issued a civil authority order lifting the social distancing orders that he previously implemented.

---

[19] Hillsborough County, Administrator Order Number 20-05 (March 17, 2020), https://www.hillsboroughcounty.org/library/hillsborough/media-center/documents/administrator/administrative-orders/ao05_32020.pdf at ¶ 3.
[20] State of Florida, Office of the Governor, Executive Order Number 20-71 (March 20, 2020), https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-71.pdf.
[21] Pinellas County, Resolution No. 20-20 (March 25, 2020), https://www.pinellascounty.org/emergency/PDF/covid19/res20-20.pdf

9

**D.    Presence of Virus at Plaintiff's Restaurants**

34.    Available data indicate a high probability that, at any given location in the Tampa Bay area during the COVID-19 pandemic—especially in a public place, and most especially a restaurant—droplets containing virus matter are physically present.

35.    Data published in November 2020 by Nature Human Behavior indicates it is a "statistical certainty" that at social or public gatherings of at least 10 people such as a "bar, restaurant, [or] business event" there was at least one individual infected with COVID-19.[22] The same data indicated that public gatherings with 50 or more people in Florida held around August 2020 had a greater than 75% chance that at least one attending individual had COVID-19.[23]

36.    A January 2021 study investigated the presence of the coronavirus in the air of public places such as shopping centers and public transportation. Researchers collected randomized air samples and evaluated them for presence of the virus. 100% of samples from shopping centers and subway trains detected the coronavirus, 80% from airport samples, and 33% from banks.[24]

37.    More specifically, Plaintiff's property has suffered "physical loss of or damage to" by virtue of the "physical loss of or damage to" Plaintiff's dining rooms or other qualifying property caused by the actual presence of virus droplets harmfully altering the air and the surfaces in the vicinity of and in Plaintiff's restaurants.

---

[22] https://www.nature.com/articles/s41562-020-01000-9.
[23] https://www.nature.com/articles/s41562-020-01000-9 (see figure 3).
[24] Hadei, Mostafa et al. "Presence of SARS-CoV-2 in the Air of Public Places and Transportation," Atmospheric Pollution Research Vol. 12, 3 (2021): 302-306, https://pubmed.ncbi.nlm.nih.gov/33519256/.

10

38.    In addition, Plaintiff's own employees suffered from COVID-19. More than 50 of its employees have tested positive for COVID-19 and Plaintiff has taken extensive measures to prevent further infection.

**E.    The Starr Policy**

39.    In return for the payment of a substantial premium, Starr issued an All-Risk Policy No. SLSTPTY11178619 (the "Policy," attached hereto as Exhibit A) to Plaintiff, in effect between May 15, 2019 and May 15, 2020.

40.    The Policy provides an $18,244,219 per-occurrence limit of liability.

41.    SunPubs complied with all terms, conditions, obligations and requirements of the Policy, including full payment of a premium of $109,730.

42.    The Policy is "All-Risk" in nature, meaning it insures against the risk of loss due to any peril unless otherwise excluded. It begins with the broad statement that it "covers the property insured hereunder against all risks of direct physical loss or damage to covered property while at INSURED LOCATIONS occurring during the Term of this POLICY, except as hereinunder excluded or limited." Property Coverage Form General Conditions, § 1.

43.    As part of the protection from "all risks," insured under the Policy, the Policy contains several different sections characterized as "TIME ELEMENT" coverage. Specifically, "TIME ELEMENT" is defined as "[T]he actual loss sustained due to the necessary interruption of the Insured's NORMAL business operations including but not limited to, loss described in the BUSINESS INTERRUPTION SECTION, if attached, and the following TIME ELEMENT extensions" endorsed on to the Policy: Extra Expense, Ingress/Egress, Leasehold Interest. Property Coverage, General Conditions, § 13(Z).

11

44. The Policy's "Business Interruption" form contains Starr's promise to pay for "Loss directly resulting from necessary interruption of the Insured's NORMAL business operations caused by direct physical loss or damage to real or personal property covered herein... arising from a peril insured against hereunder and occurring during the term of this POLICY; all while located at INSURED LOCATIONS." Business Interruption, § I.

45. The Business Interruption coverage protects losses to Plaintiff's gross earnings and expenses from the interruption of its business. The Policy covers the "ACTUAL LOSS SUSTAINED by the Insured resulting directly from the necessary interruption of business, but not exceeding the reduction in GROSS EARNINGS less charges and expenses which do not necessarily continue during the interruption of business." Business Interruption, § 2. Starr also agreed to cover "Expenses Related to Reducing Loss," which are "expenses as are necessarily incurred for the purpose of reducing loss under this POLICY ...." *Id*., Business Interruption, § 4.

46. The Policy also includes coverage for "Interruption by Civil or Military Authority" which promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises. This section provides:

> This POLICY is extended to include, starting at the time of physical loss or damage, the actual loss sustained by the Insured, resulting directly from an interruption of business as covered hereunder, during the length of time, not exceeding the number of days shown under TIME LIMITS stated in the Declarations, when, as a direct result of damage to or destruction of property within one (1) statute mile of an INSURED LOCATION by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil or military authority.

Business Interruption, § 7.

47. Also as part of its broad coverage for interference with access to Plaintiff's properties, the Policy also provides Ingress/Egress coverage as long as access to Plaintiff's

premises is impaired as a result of loss or damage like that caused by the coronavirus. The Ingress/Egress coverage provides extended coverage for "the ACTUAL LOSS SUSTAINED ... when as a direct result of loss or damage by a peril insured against to property of a type insured against within one (1) mile of an INSURED LOCATION, ingress to or egress from the premises insured is impaired irrespective of whether the premises or property insured shall have been damaged." Endorsement 15.

48.     The Extra Expense coverage goes beyond the promise to pay for "Expenses Related to Reducing Loss" in the Business Interruption Section and covers "the reasonable and necessary EXTRA EXPENSE[25] incurred by the Insured in order to continue as nearly as practicable the NORMAL operation of the Insured's business following direct physical loss or damage of real or personal property at an INSURED LOCATION(S), by the peril(s) insured against during the Term of this POLICY." Endorsement 11.

49.     For all coverages, the Policy also provides general coverage for "Protection and Preservation of Property" such that Plaintiff would not be penalized for actions taken to protect its property. This coverage states:

> In case of actual physical loss or damage of the type insured against by this POLICY, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Property insured hereunder shall be added to the total direct physical loss or damage otherwise recoverable under this POLICY and be subject to the applicable Deductible.

Property Coverage, General Conditions, § 9.

50.     In 2006, the Insurance Services Office (ISO), a service provider to the insurance industry, crafted a specific exclusion for "Communicable Diseases."

---

[25] "Extra Expense" is defined as the "excess, if any, of the total cost incurred during the PERIOD OF INDEMNITY chargeable to the operation of the Insured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no damage or destruction occurred." Policy, Endorsement 11, § G.

51.     Unlike many property policies offering business interruption coverage, the Policy does not contain ISO's "communicable disease" exclusion, or any other dedicated exclusion that would apply to a claim made for losses stemming from a virus.

52.     The presence of COVID-19 caused direct physical loss or damage to the covered property under the Plaintiff's policy, by denying use of and damaging the covered property, and by causing a necessary interruption of business during the "period of indemnity."

53.     A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy.

54.     These events triggered the Business Interruption, Interruption by Civil or Military Authority, Ingress/Egress, and Leasehold Interest coverage.

55.     As a result of the presence of COVID-19, Plaintiff lost Business Income and also incurred Extra Expenses. These included, without limitation, weekly mandatory testing for its employees beginning July 2, 2020, physical modifications to the restaurant, increased labor costs to manage social distancing, personal protective equipment, additional seats, increased print cost for menus and signage, and tenting of additional space.

**F.     SunPubs' Claim Is Denied Without Investigation**

56.     SunPubs submitted its claim to Starr on March 18, 2020 for losses associated with COVID-19 and the Closure Orders. Defendant denied those claims on August 20, 2020. SunPubs filed a formal complaint on March 16, 2021, which Defendant also denied on March 31, 2021.

57.     Starr's denial was in bad faith at least in part because it well knew that SunPubs' interpretation of the policy was reasonable. Specifically, it knew that a court had

held the insured's interpretation of "physical loss or damage to property" was reasonable, that the Pollution and Contamination clause was inapplicable to the coronavirus, and that Civil or Military Authority coverage applied. *See JGB Vegas Retail Lessee, LLC v. Starr Surplus Lines Ins. Co.*, No. A-20-816628-B, 2020 WL 7190023, at *3 (Nev. Dist. Ct. Nov. 30, 2020) (in COVID-19 business income loss case relying on nearly identical Starr policy, court found "Starr has not shown that it is unreasonable to interpret the Pollution and Contamination Exclusion to apply only to instances of traditional environmental and industrial pollution and contamination that is not at issue here, where [plaintiff's] losses are alleged to be the result of a naturally-occurring, communicable disease. This is the case, even though the Exclusion contains the word 'virus.'")

58.     Furthermore, Starr never tested for coronavirus at any SunPubs restaurant to determine whether the SARS-CoV-2 virus was present at any of the insured premises.

59.     In fact, Starr conducted no investigation of any kind into SunPubs' claim.

60.     It is apparent from correspondence that Starr merely issued a blanket denial it sent to all restaurants experiencing COVID-19-related losses, instead of handling SunPubs' claim in good faith.

61.     After the end of the Policy in May 2020, Plaintiff renewed it for another year, paying a premium of $123,000. This policy included, at Starr's instigation, an additional exclusion for communicable disease.

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

62.     Plaintiff SunPubs repeats and realleges Paragraphs 1-61 as if fully set forth herein.

15

Case 1:21-cv-05041 Document 1-1 Filed 06/08/21 Page 19 of 126

63. Starr issued the Policy to SunPubs in return for a premium which SunPubs paid in full.

64. SunPubs complied with all terms, conditions, obligations and requirements of the Policy.

65. In the Policy, Starr agreed to pay for SunPubs' actual loss of Business Income sustained due to the necessary interruption of business during the "period of indemnity." Starr agreed to pay for loss of Business Income during the "period of indemnity" that begins with the date of direct physical loss or damage.

66. The presence of COVID-19 onsite caused direct physical loss and damage to SunPubs' covered properties, requiring suspension of restaurant operations at those properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff's policies.

67. SunPubs' losses also triggered coverage under the Interruption by Civil or Military Authority coverage, the Ingress/Egress coverage, the Extra Expense coverage, and the Leasehold Interest coverage.

68. Plaintiff has complied with all applicable provisions of its policies yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

69. As a result of Defendant's breaches of the policies, Plaintiff has sustained substantial damages for which Defendant is liable in an amount to be established at trial.

16

## SECOND CAUSE OF ACTION

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR
## DEALING

70.      Plaintiff SunPubs repeats and realleges Paragraphs 1-61 as if fully set forth herein.

71.      The Policy is a contract under which SunPubs paid a premium in exchange for Starr's promise to pay claims covered by the Policy.

72.      Under New York law, insurers are obligated to thoroughly investigate any plausible claim filed and to negotiate in good faith.

73.      Starr has failed in this obligation. Starr (and the insurance industry) as a whole have issued omnibus denials to all pandemic-related claims despite the insured's reasonable expectation of coverage, and despite the "All-Risk" nature of its obligations under the Policy.

74.      Defendant acted in bad faith by unreasonably denying SunPubs' claim despite the absence of a communicable disease or other dedicated virus exclusion in the Policy.

75.      Starr acted in bad faith, and also prejudiced SunPubs' ability to prove its claim, by failing to timely and reasonably investigate the circumstances of SunPubs' claim, including but not limited to Starr's failure to test for coronavirus at SunPubs' premises.

76.      By denying all claims related to COVID-19 in conjunction with its obligation to investigate the claims, the Defendant breached its duty to investigate and settle a claim in good faith. Defendant's failure to provide coverage to its insureds during the worst global pandemic in more than 100 years violates the duty to act in good faith.

17

## THIRD CAUSE OF ACTION

### DECLARATORY JUDGMENT

77.     SunPubs repeats and realleges Paragraphs 1-61 as if fully set forth herein.

78.     Starr issued the Policy to SunPubs in return for a premium which SunPubs paid in full.

79.     SunPubs complied with all terms, conditions, obligations and requirements of the Policy.

80.     In the Policy, Starr agreed to pay for SunPubs' actual loss of Business Income sustained due to the necessary interruption of business during the "period of indemnity." Starr agreed to pay for loss of Business Income during the "period of indemnity" that begins with the date of direct physical loss or damage.

81.     The presence of COVID-19 onsite caused direct physical loss and damage to SunPubs' covered properties, requiring suspension of restaurant operations at those properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff's policies.

82.     SunPubs' losses also triggered coverage under the Interruption by Civil or Military Authority coverage, the Ingress/Egress coverage, the Extra Expense coverage, and the Leasehold Interest coverage.

83.     SunPubs has complied with all applicable provisions of its policies yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

84.     SunPubs seeks a declaratory judgment from this Court declaring the following:

18

(i)     Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the policy; and

(ii)    Defendant is obligated to pay Plaintiff for the full amount of such losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in its favor against the Defendant as follows:

a.      Entering judgment in favor of the Plaintiff SunPubs and awarding damages for breach of contract in an amount to be determined at trial, together with pre- and post-judgment interest;

b.      Entering declaratory judgment as follows:

(i)     Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the policy; and

(ii)    Defendant is obligated to pay Plaintiff for the full amount of such losses;

c.      Ordering Defendant to pay both pre and post-judgment interest on any amounts awarded;

d.      Ordering Defendants to pay attorneys' fees and costs of suit; and

e.      Ordering such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable.

19

Dated: New York, New York
      May 14, 2021

Respectfully submitted,

HECHT PARTNERS LLP

By: _____

Kathryn Lee Boyd
David L. Hecht
125 Park Avenue, 25th Floor
New York, NY 10017
Tel:    (212)851-6821
Email: lboyd@hechtpartners.com
        dhecht@hectpartners.com

*Attorneys for Plaintiff, SFMB Management, LLC*

20

# EXHIBIT A

**SFMB MANAGEMENT, LLC**

**Starr Surplus Lines Insurance Company Policy No.  SLSTPTY11178619**

# PROPERTY COVERAGE FORM
## SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

| | FORM NAME | FORM NO. | NO. OF PAGES |
|---|---|---|---|
| 1. | Starr Surplus Lines Insurance Company Declarations Page | N/A | 2 Pages |
| 2. | Common Policy Conditions | IL 00 17 11 98 | 1 Page |
| 3. | Commercial Property Conditions | CP 00 90 07 88 | 2 Pages |
| 4. | US Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders | IL P 001 01 04 | 1 Page |
| 5. | Policyholder State Notices | N/A | 1 Page |
| 6. | Property Coverage Form Declarations | PR 001 D (05/12) | 4 Pages |
| 7. | Property Coverage Form General Conditions | PR 002 (02/19) | 16 Pages |
| 8. | Property Coverage Form Property Section | PR 003 (02/12) | 1 Page |
| 9. | Property Coverage Form Business Interruption Section | PR 004 (02/12) | 3 Pages |

### ENDORSEMENTS

| | | | | ENDORSEMENT NO. |
|---|---|---|---|---|
| 10. | Accounts Receivable Endorsement | PR 006 (02/12) | 2 Pages | 1 |
| 11. | Agreed Amount Endorsement (Business Interruption) | PR 007 (02/12) | 1 Page | 2 |
| 12. | Agreed Amount Endorsement (Property) | PR 008 (02/12) | 1 Page | 3 |
| 13. | Biological, Chemical or Nuclear Exclusion | N/A | 1 Page | 4 |
| 14. | Boiler and Machinery Endorsement | PR 012 (07/13) | 5 Pages | 5 |
| 15. | Business Interruption Extended Period of Indemnity Endorsement | PR 013 (02/12) | 1 Page | 6 |
| 16. | Course of Construction Endorsement | PR 018 (02/12) | 4 Pages | 7 |
| 17. | Data Distortion/Corruption Endorsement Covers Subsequent Damage from Named Perils and B&M | PR 020 (02/12) | 1 Page | 8 |
| 18. | Electronic Data Processing Endorsement | PR 023 (02/12) | 2 Pages | 9 |
| 19. | Electronic Date Recognition Clause Endorsement (Combined) | PR 024 (02/12) | 1 Page | 10 |
| 20. | Extra Expense Endorsement | PR 028 (02/12) | 2 Pages | 11 |
| 21. | Fire and Police Department Service Charges Endorsement | PR 029 (02/12) | 1 Page | 12 |
| 22. | Fine Arts Endorsement | PR 030 (11/16) | 2 Pages | 13 |

**PR 078(02/12)**                                                    Page 1 of 2

| 23. | Increased Cost of Construction & Demolition Endorsement | PR 034 (06/16) | 1 Page | 14 |
| 24. | Ingress/Egress Endorsement | PR 035 (02/12) | 1 Page | 15 |
| 25. | Leasehold Interest Endorsement | PR 037 (02/12) | 2 Pages | 16 |
| 26. | Minimum Earned Premium Endorsement | N/A | 1 Page | 17 |
| 27. | Mobile Equipment Endorsement | PR 041 (11/16) | 3 Pages | 18 |
| 28. | Named Windstorm Definition | PR 042 (11/16) | 1 Page | 19 |
| 29. | Newly Acquired Locations Endorsement | PR 043 (11/16) | 1 Page | 20 |
| 30. | Occurrence Limit of Liability Endorsement | PR 044 (02/12) | 1 Page | 21 |
| 31. | Off-Premises Power Endorsement Property Damage & Business Interruption Coverage | PR 045 (02/12) | 1 Page | 22 |
| 32. | Pollution and Contamination Clean-Up Endorsement | PR 049 (02/12) | 1 Page | 23 |
| 33. | Radioactive Contamination Exclusion | NMA1191 | 1 Page | 24 |
| 34. | Rental Value Insurance Endorsement | PR 053 (02/12) | 2 Pages | 25 |
| 35. | Replacement Cost Endorsement | PR 054 (09/14) | 2 Pages | 26 |
| 36. | Roof Limitation Endorsement | N/A | 1 Page | 27 |
| 37. | Schedule of Locations Endorsement | PR 056 (09/14) | 1 Page | 28 |
| 38. | Service of Process Clause Endorsement | SSL-0005 | 1 Page | 29 |
| 39. | Spoilage Endorsement | N/A | 1 Page | 30 |
| 40. | Temporary Removal of Property Endorsement | PR 059 (02/12) | 1 Page | 31 |
| 41. | Terrorism Exclusion (For Certified Acts of Terrorism Under the Terrorism Risk Insurance Act, as amended) | 61330 (01/15) | 1 Pages | 32 |
| 42. | Total Terrorism Exclusion | 61331 (01/15) | 1 Page | 33 |
| 43. | Trade or Economic Sanctions Endorsement | PR 067 (02/12) | 1 Page | 34 |
| 44. | Transit Endorsement | PR 064 (07/13) | 3 Pages | 35 |
| 45. | Unnamed Location Coverage Endorsement (Real and Personal Property) | PR 065 (02/12) | 1 Page | 36 |
| 46. | Valuable Papers and Records Endorsement | PR 066 (07/13) | 2 Pages | 37 |
| 47. | War and Terrorism Exclusion (as respects Transit) | NMA2918 | 1 Page | 38 |
| 48. | Policy Amendment Endorsement | N/A | 1 Page | 39 |
| 49. | Application of Sublimits Endorsement | N/A | 1 Page | 40 |
| 50. | Additional Insureds and Loss Payees Endorsement | N/A | 2 Pages | 41 |
| 51. | Sinkhole Loss Endorsement | N/A | 3 Pages | 42 |
| 52. | Appendix A – New Madrid Seismic Zone | PR 073 (02/12) | 2 Pages | |
| 53. | Appendix B – Pacific Northwest Seismic Zones | PR 074 (02/12) | 1 Page | |
| 54. | Appendix C – Definition of Tier 1 Wind Counties | PR 075 (09/15) | 2 Pages | |
| 55. | Claims Notice | N/A | 1 Page | |

| **Program Manager:** | **Company:** |
|---|---|
| **Starr Specialty Lines Insurance Agency, LLC** | **Starr Surplus Lines Insurance Company** |
| **3353 Peachtree Road NE** | **399 Park Avenue** |
| **Suite 1000** | **8th Floor** |
| **Atlanta, GA 30326** | **New York, NY 10022** |

**Policy Number: SLSTPTY11178619**          **Renewing or in lieu of: SLSTPTY11066818**

# DECLARATIONS

| | | | |
|---|---|---|---|
| **Insured:** | SFMB Management, LLC | **Producer:** | All Risks Ltd. |
| **Address:** | 405 S. Howard Avenue, Tampa, FL 33606 | **Address:** | 318 US Hwy 1 Suite 206 Jupiter, FL 33477 |
| | | **Commission:** | 17.5% |

**Policy Period**: From May 15, 2019 at 12:01 A.M., to May 15, 2020 at 12:01 A.M. Local Standard Time at the address of the insured listed in the declarations.

To the extent that coverage in this policy replaces coverage in other policies terminating at noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

The insurance afforded is only with respect to the specific part and coverages therein, the full title of which is set forth below the caption "Form."

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| PERILS INSURED | COVERAGE PROVIDED | FORMS & ENDORSEMENTS | LIMIT OF LIABILITY |
|---|---|---|---|
| AS PER ATTACHED FORMS AND ENDORSEMENTS | AS PER ATTACHED FORMS AND ENDORSEMENTS | SEE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS | $18,244,219 per occurrence, that being 100% part of $18,244,219 per occurrence excess of various deductibles. Coverage does not apply to locations situated in Guam or the U.S. Virgin Islands. |

| GROSS PREMIUMS: | | |
|---|---|---|
| | PROPERTYPREMIUM: | $109,730.00 |
| | CERTIFIED TERRORISM PREMIUM: | $0.00 |
| | NON-CERTIFIED TERRORISM PREMIUM: | $0.00 |
| | **TOTAL PREMIUM:** | **$109,730.00** |

This Declaration and attached Form(s), with Policy Standard Conditions and Endorsements, if any, issued to form a part therof, completes the above numbered policy.

The Company shall have no duty to defend or investigate any claim or suit unless and until all limits of all underlying insurance policies have been exhausted by payment of judgements, claims or settlements.

If any underlying insurance policy has no duty to pay a claim for injury or damage for a reason other than exhaustion of an aggregate limit of insurance, then Company shall have no obligation to make any payment under this policy.

Any taxes imposed by virtue of this policy being written by an unauthorized insurer are the responsibility of the insured and a licensed producer.

_____
**Signature of Authorized Agent**

6/14/19
_____
**Date**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**COMMERCIAL PROPERTY**

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

   **a.** During the policy period shown in the Declarations; and

   **b.** Within the coverage territory.

**2.** The coverage territory is:

   **a.** The United States of America (including its territories and possessions);

   **b.** Puerto Rico; and

   **c.** Canada.

Case 1:21-cv-05041  Document 1-1  Filed 06/08/21  Page 31 of 126

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a. Someone insured by this insurance;

    b. A business firm:

        (1) Owned or controlled by you; or

        (2) That owns or controls you; or

    c. Your tenant.

This will not restrict your insurance.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**IL P 001 01 04**                    © ISO Properties, Inc., 2004                    **Page 1 of 1**

# <u>POLICYHOLDER NOTICES</u>

<u>Florida:</u>

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

# PROPERTY COVERAGE FORM
# DECLARATIONS

**POLICY NUMBER:**      **Starr Surplus Lines Insurance Company Policy No. SLSTPTY11178619**

**NAMED INSURED:**      **SFMB MANAGEMENT, LLC**

**MAILING ADDRESS:**      **405 S. HOWARD AVENUE, TAMPA, FL  33606**

**LOSS PAYABLE CLAUSE:**      **LOSS, IF ANY, TO BE ADJUSTED WITH AND PAYABLE TO INSURED, WHOSE RECEIPT SHALL CONSTITUTE A RELEASE IN FULL OF ALL LIABILITY UNDER THIS POLICY AS REGARDS SUCH LOSS.**

**TERM OF THIS POLICY:**      **FROM MAY 15, 2019 TO MAY 15, 2020 AT 12:01 A.M. STANDARD TIME AT THE ABOVE MAILING ADDRESS.**

**PREMIUM:**      **$109,730**

**LIMIT OF LIABILITY:**      **THE LIMIT OF LIABILITY UNDER THIS POLICY SHALL IN NO EVENT EXCEED THE AMOUNT SHOWN BELOW.**

**POLICY LIMIT OF LIABILITY:**      **$18,244,219 ANY ONE OCCURRENCE EXCESS OF POLICY DEDUCTIBLES.**

**SUBLIMITS:**

**THE FOLLOWING SUBLIMITS ARE PART OF AND NOT IN ADDITION TO THE POLICY LIMIT OF LIABILITY:**

| | | |
|---|---|---|
| **EARTH MOVEMENT** | **NOT COVERED** | **PER OCCURRENCE AND IN THE ANNUAL AGGREGATE, EXCEPT:** |
| **FLOOD** | **NOT COVERED** | **PER OCCURRENCE AND IN THE ANNUAL AGGREGATE, EXCEPT:** |
| **ACCOUNTS RECEIVABLE:** | **$1,000,000** | |
| **COURSE OF CONSTRUCTION:** | **$500,000** | |
| **DEBRIS REMOVAL:** | **THE GREATER OF 25% OF ADJUSTED DIRECT PROPERTY LOSS OR $2,500,000** | |
| **ELECTRONIC DATA PROCESSING:** | **$250,000** | |
| **EXTRA EXPENSE:** | **$500,000** | |
| **FINE ARTS:** | **$100,000** | |
| **FIRE AND POLICE DEPARTMENT SERVICE CHARGES:** | **$25,000** | |

**SUBLIMITS (Continued):**

| | |
|---|---|
| **INCREASED COST OF CONSTRUCTION, DEMOLITION:** | $1,000,000 |
| **INCREASED COST OF CONSTRUCTION, DEMOLITION (UNDAMAGED PORTION):** | INCLUDED |
| **LEASEHOLD INTEREST:** | $250,000 |
| **LEASED OR RENTED EQUIPMENT:** | $50,000 |
| **MOBILE EQUIPMENT:** | $50,000 ($10,000 max per item) |
| **MISCELLANEOUS UNNAMED LOCATIONS:** | $50,000 |
| **NEWLY ACQUIRED LOCATIONS:** | $1,000,000 |
| **POLLUTION AND CONTAMINATION CLEAN UP:** | $50,000 PER OCCURRENCE AND IN THE ANNUAL AGGREGATE |
| **TEMPORARY REMOVAL OF PROPERTY:** | $50,000 |
| **RENTAL VALUE:** | $50,000 |
| **OFF-PREMISES POWER:** | $100,000 |
| **SEWER BACKUPS & DRAINS:** | $50,000 |
| **SIGNS:** | $50,000 |
| **SPOILAGE:** | $100,000 |
| **TRANSIT:** | $50,000 |
| **TREES AND SHRUBS:** | $50,000(NOT TO EXCEED $ 1,000 PER TREE OR SHRUB) |
| **VALUABLE PAPERS AND RECORDS:** | $500,000 |
| **VEHICLES:** | NO COVERAGE |

| | | |
|---|---|---|
| **BOILER AND MACHINERY**: | INCLUDED IN POLICY | |
| | LIMIT OF LIABILITY | ANY ONE ACCIDENT |

The following sublimits are part of and not in addition to the Boiler and Machinery Sublimit:

| | | |
|---|---|---|
| AMMONIA CONTAMINATION: | $100,000 | ANY ONE ACCIDENT |
| CONSEQUENTIAL DAMAGE: | $100,000 | ANY ONE ACCIDENT |
| EXPEDITING EXPENSES: | $100,000 | ANY ONE ACCIDENT |
| HAZARDOUS SUBSTANCES: | $100,000 | ANY ONE ACCIDENT |
| WATER DAMAGE: | $100,000 | ANY ONE ACCIDENT |

**TIME LIMITS:**

NO COVERAGE IS PROVIDED BY THIS POLICY BEYOND THE CORRESPONDING TIME LIMIT SPECIFIED BELOW:

CIVIL AND MILITARY AUTHORITY     14 CONSECUTIVE DAYS

INGRESS/EGRESS     14 CONSECUTIVE DAYS

NEWLY ACQUIRED LOCATIONS     60 CONSECUTIVE DAYS

EXTENDED PERIOD OF INDEMNITY     180 DAYS

**WAITING PERIOD:**

COVERAGE IS PROVIDED BY THIS POLICY ONLY IF THE CORRESPONDING WAITING PERIOD SPECIFIED IS EXCEEDED BY THE PERIOD OF INTERRUPTION OF THE INSURED'S BUSINESS. IF THE WAITING PERIOD IS EXCEEDED, THEN THE CORRESPONDING COVERAGE WILL APPLY:

OFF-PREMISES POWER:     [48] HOUR(S) WAITING PERIOD

**DEDUCTIBLES:**

ALL DEDUCTIBLES LISTED BELOW ARE PER OCCURRENCE EXCEPT WITH RESPECT TO COVERAGE PROVIDED UNDER THE BOILER & MACHINERY ENDORSEMENT, IF ATTACHED, WHICH SHALL BE ANY ONE ACCIDENT.

**PROPERTY DAMAGE &**
**TIME ELEMENT:**     **$5,000**

**EXCEPTIONS TO ABOVE DEDUCTIBLES:**

**NAMED WINDSTORM:**
**(PROPERTY DAMAGE AND TIME ELEMENT COMBINED):**     **3**% SUBJECT TO A $25,000 MINIMUM PER OCCURRENCE

**WIND:**     **$25,000 per occurrence**

1. If the deductible is specified as a (%) percentage, whether separately or combined, the deductible is calculated as follows:

   PROPERTY DAMAGE – **SEE ABOVE**% of the 100% value submitted to and accepted by the COMPANY at the time of loss, of the property insured at the LOCATION where the physical loss or damage occurred.

   TIME ELEMENT **– SEE ABOVE**% of the 100% Time Element values that would have been earned in the 12 month period following the OCCURRENCE by use of the facilities at the LOCATION where the loss or damage occurred, plus that proportion of the 100% TIME ELEMENT values at all other LOCATIONS where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12 month period following the OCCURRENCE

2. If the deductible is specified in hours or days, liability shall exist only for such part of the determined period of interruption  in excess of the first number of hours or days stated above, starting at the time of physical loss or damage.

3. When this POLICY insures more than one INSURED LOCATION, the deductible will apply against the total loss covered by this POLICY in any one OCCURRENCE except that a deductible that applies on a per LOCATION basis, if specified, will apply separately to each LOCATION where the physical damage occurred regardless of the number of Locations involved in the OCCURRENCE.

4. Unless stated otherwise, if two or more deductibles apply to an OCCURRENCE, the total to be deducted will not exceed the largest deductible applicable.  If two or more deductibles apply on a per INSURED LOCATION basis in an OCCURRENCE the largest deductible applying to each INSURED LOCATION will be applied separately to each such INSURED LOCATION.

5. If separate Property Damage and TIME ELEMENT deductibles are shown in the Declarations, then the deductible amount(s) shown in the Declarations shall apply separately to each such coverage.

6. The term "TIME ELEMENT" shall be defined as the actual loss sustained due to the necessary interruption of the Insured's NORMAL business operations including but not limited to, loss described in the <u>BUSINESS INTERRUPTION SECTION</u>, if attached, and the following TIME ELEMENT extensions, if endorsed hereon: Contingent Business Interruption, Contingent Extra Expense, Extra Expense, Ingress/Egress, Leasehold Interest, Rental Value, Off Premises Power Business Interruption, but this definition shall not otherwise expand or modify the coverage, if any, provided by this POLICY or its Endorsements.

<u>**COINSURANCE:**</u>                        **100% (WAIVED BY AGREED AMOUNT ENDORSEMENT)**

<u>**LOCATIONS COVERED:**</u>                **SEE SCHEDULE ATTACHED**

<u>**INSURANCE COMPANY:**</u>                **SEE SECURITY PAGE ATTACHED**

<u>**ISSUED AT:**</u>                        **STARR SPECIALTY LINES INSURANCE AGENCY, LLC**
                                        **399 Park Avenue**
                                        **New York, NY 10022**

# PROPERTY COVERAGE FORM
# GENERAL CONDITIONS

1. <u>COVERAGE</u>:  <u>PERILS INSURED AGAINST</u>:

   This POLICY covers the property insured hereunder against all risks of direct physical loss or damage to covered property while at INSURED LOCATIONS occurring during the Term of this POLICY, except as hereinafter excluded or limited.

2. <u>LIMITS OF LIABILITY</u>:

   The POLICY Limit of Liability shall be the amount stated in the Declarations for loss, damage, costs or expenses arising from any one OCCURRENCE.  The Sublimits of liability as stated on the Declarations and in any attached endorsements are part of and not in addition to the POLICY Limit of Liability.

   The maximum Sublimit amount collectible under this POLICY shall be the Sublimit applicable for all loss or damage resulting from a peril insured against by this POLICY, regardless of any other Sublimit involved in this POLICY.

   The COMPANY's liability under this POLICY will not exceed the percentage shown in the Declarations of the Policy Limit of Liability or any Sublimit of liability as provided in the Declarations, the Limits of Liability clause in this section or elsewhere in this POLICY, nor the percentage shown in the Declarations of the recoverable loss in any one OCCURRENCE.

3. <u>DEDUCTIBLES</u>:

   In each case of loss covered by this POLICY, the COMPANY will be liable only if the Insured sustains a loss in a single OCCURRENCE greater than the applicable deductible specified on the Declarations, and only for its share of the amount that exceeds the Deductible.

   A. When this POLICY insures more than one INSURED LOCATION, the deductible will apply against the total loss covered by this POLICY in any one OCCURRENCE except that a deductible that applies on a per LOCATION basis, if specified, will apply separately to each LOCATION where the physical damage occurred regardless of the number of Locations involved in the OCCURRENCE.

   B. Unless stated otherwise, if two or more deductibles apply to an OCCURRENCE, the total to be deducted will not exceed the largest deductible applicable.  If two or more deductibles apply on a per INSURED LOCATION basis in an OCCURRENCE the largest deductible applying to each INSURED LOCATION will be applied separately to each such INSURED LOCATION.

   C. If separate Property Damage and TIME ELEMENT deductibles are shown in the Declarations, then the deductible amount(s) shown in the Declarations shall apply separately to each such coverage.

4. <u>COINSURANCE</u>:

   a. Applicable to <u>PROPERTY SECTION</u>:

   It is expressly stipulated and made a condition of this POLICY that the Insured shall at all times maintain contributing insurance on each item of property covered by this POLICY to the extent of at least the percentage specified on the Declarations of the value required per the terms and conditions of the Valuation Clause in this POLICY at the time of loss, and that failing to do so, the Insured shall to the extent of such deficit bear his, or their proportion of any loss.

Includes copyrighted material of ISO Properties, Inc., used with its permission.

In the event that the aggregate claim for any loss is less than $10,000. and less than 2% of the total amount of insurance upon the property described herein at the time such loss occurs, the Insured shall not be required to furnish any inventory of the undamaged property to establish compliance with the Valuation Clause, provided however, that nothing herein shall be construed to waive the application of the Coinsurance Clause.

b.  Applicable to <u>BUSINESS INTERRUPTION SECTION</u>:

This COMPANY shall be liable, in the event of loss, for no greater proportion thereof than the amount hereby covered bears to the percentage specified on the Declarations of the GROSS EARNINGS as defined hereafter, that would have been earned had no loss occurred during the twelve (12) MONTHs immediately following the date of damage to or destruction of the covered property.

5.  <u>PROPERTY EXCLUDED</u>:

This POLICY does not cover:

a.  Currency, money, deeds, evidence of debt or title, notes, securities, stamps, letters of credit, jewelry, precious stones, furs, fine arts, valuable papers, accounts receivable, accounts, bills, semi-precious stones, gold, silver, platinum and other precious alloys or metals, (except coverage is provided for precious metals and alloys on the premises which are part of any catalyst subject to the limitations specified under paragraph u. of Property Excluded), unless endorsed hereon;

b.  Property while in transit, unless endorsed hereon;

c.  DATA PROCESSING EQUIPMENT AND MEDIA, except for damage and destruction directly resulting from the perils of fire, lightning,  explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, WIND, unless endorsed hereon;

d.  Land, including excavations, grading, or filling, land values, landscaping, roads, lawns, trees, plants, shrubs, standing timber, crops, atmosphere, any water course or body of WATER whether above or below ground including sediments and/or beds of any body of WATER, or the restoration or replacement of any of the above;

e.  Costs for excavating, clearing, cutting, removing, replacing, re-grading, re-burying, lowering, raising, moving, relocating, filling-in, WATER or air jetting non-covered property of any type that surrounds, rests, upon, supports or interferes with the use and/or operation of above or below grade level of covered property;

f.  Animals, livestock, fish, fowl, birds, pets;

g.  Piers, docks, wharves, retaining walls, bulkheads, breakwaters, riprap, pilings, breasting and mooring dolphins, unless specifically endorsed hereon;

h  Foundations, including pilings of buildings or structures which extend below the surface of the lowest pit or basement floor, or where there is no pit or basement, which extend below the surface of the ground inside the foundation walls of the buildings or structures;

i.  Foundations of machinery or equipment which are below the surface of the ground;

j.  Underground wells, underground and underwater piping, including personal property contained therein; well casings, piping, mains, sewers, fittings, conduits, drains or flues, and contents including personal property contained therein; underground cables; underground tanks, subterranean strata and their contents, including personal property located therein;

Case 1:21-cv-05041 Document 1-1 Filed 06/08/21 Page 40 of 126

k.   Mines, shafts, caverns, tunnels, or any property located therein;

l.   Open pits and any other open cut excavation;

m   Aircraft and their contents; satellite and/or spacecraft and their contents;

n.   Motor vehicles or trailers licensed for use on public highways and their contents, except contents at INSURED LOCATIONS consigned to or to be shipped by the Insured while not under control of common carrier;

o.   Hulls or waterborne vessels of every type, nature and description and their contents;

p.   Railroad or railway rolling stock and contents, except contents at INSURED LOCATIONS consigned to or to be shipped by the Insured while not under control of public carrier;

q.   Earthen, concrete and all other types of storage pits or reservoirs and their contents;

r.   Dams, tailings dams, watershafts, power tunnels, dikes, gates, flumes, containment basins, berms, levees, penstocks, and settling and/or collecting ponds;

s.   All property specifically insured elsewhere;

t.   Property in course of construction, unless endorsed hereon;

u.   Any refractory lining or catalyst, except for damage or destruction directly resulting from the perils of external fire, lightning, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, WIND;

v.   Crude oil, natural gas or hydrocarbons prior to initial recovery above ground;

w.   Drilling and producing platforms, including rigs, derricks, cranes, hydrocarbon wells, and associated equipment;

x.   Property located offshore or beyond the shoreline except that structures (and their contents) extending from land or shore are not to be considered as offshore;

y.   Owned electrical transmission and distribution lines and their supporting structures located beyond an INSURED LOCATION;

z.   Damage to property in open air from WIND or rain unless such property is designed to function without the protection of walls or roof.

6.   PERILS EXCLUDED:

This POLICY does not insure against loss or damage caused by or resulting from any of the following regardless of any cause or event contributing concurrently or in any other sequence to the loss:

a.   Infidelity or dishonesty of the Insured or any of its directors, officers, employees, agents, contractors, or others to whom the insured property may be entrusted; loss or damage resulting from the Insured or any of its directors, officers, employees, agents, or contractors voluntarily parting with title or possession of any property if induced to do so by any fraudulent scheme, trick, device or false pretense; any unexplained loss, mysterious disappearance, or loss or shortage disclosed on taking inventory, or resulting from accounting errors; burglary or theft by a director, officer, employee, agent, or contractor;

Includes copyrighted material of ISO Properties, Inc., used with its permission.

b.  Faulty or defective material, faulty workmanship, faulty methods of construction, errors or omissions in plans, specifications, or designs, errors in processing, or errors in manufacturing the Insured's product, unless loss by a separate peril not otherwise excluded ensues, and then coverage shall be afforded only for loss, damage, costs, or expenses caused by the separate ensuing peril;

c.  Mechanical or machinery breakdown, disassociation or derangement, including rupture or bursting caused by centrifugal force; nor rupture, bursting or operation of pressure relief devices;

d.  Electrical failure, electrical injury or disturbance to electrical appliances, devices, fixtures, or wiring caused by electrical currents artificially generated, unless fire or explosion ensues and then coverage shall be afforded only for the actual loss or damage directly caused by such ensuing fire or explosion;

e.  Explosion, bulging, rupture, cracking or bursting of steam boilers, or steam pipes, or steam turbines, or steam engines, flywheels or gas turbines, if owned by, leased by or operated under the control of the Insured; and bulging, bursting, rupture, explosion or cracking of fired and unfired pressure vessels, except that this COMPANY shall be liable for direct explosion loss caused by internal pressure of steam in processing machinery, equipment or apparatus, and direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox or combustion chamber of any fired vessel, other than gas turbines, or within the flues or passages which conduct the gases of combustion therefrom;

f.  Deterioration, depletion, inherent vice, latent defect, termites, moth, vermin, animals, insects, larvae, pupae, infestation, wear and tear, dampness or dryness of atmosphere, extremes or changes of temperature, smog, shrinkage, evaporation, loss of weight, rust, corrosion, erosion, wet or dry rot, change in flavor or color or texture or finish, unless loss by a separate peril not otherwise excluded ensues, and then coverage shall be afforded only for loss, damage, costs, or expenses caused by the separate ensuing peril;

g.  Settling, cracking, shrinkage, bulging or expansion in foundations, walls, floors, or ceilings;

h.  Misappropriation, conversion, embezzlement or secretion by any person in lawful possession of the property or failure of such persons to return property loaned, rented or placed in their care;

i.  Evaporation, mixing, shortage, seepage, spillage or leakage unless resulting from direct physical loss or damage to the tanks, taps or pipes by an insured peril, except willful and malicious damage or destruction of the tanks, taps or pipes is excluded;

j.  War including but not limited to:

    1.  Hostile or warlike action in time of peace or war, whether such loss or damage be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to or aggravated by the peril(s) insured against in this POLICY, including action in hindering, combating, or defending against an actual, impending, or expected attack:
        a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces;
        b) by military, naval or air forces;
        c) by an agent of any such government, power, authority or forces; or

    2.  Any weapon employing atomic fission, fusion, or radioactive force whether in time of peace or war; or

    3.  Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such a situation; or

    4.  Risks of contraband or illegal transportation or trade;

Includes copyrighted material of ISO Properties, Inc., used with its permission.

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 42 of 126

k.   Confiscation, seizure, expropriation, nationalization, commandeering, requisition or destruction of or damage to property by order of the Government de jure or de facto or any public, municipal or local authority of the country or area in which the property is situated (except as provided by the Governmental Action Clause), seizure or destruction under quarantine or customs regulation;

l.   1.   Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or        aggravated by the peril(s) insured against in this POLICY; however, subject to the foregoing and all provisions of this POLICY, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this POLICY;

     2.   a)   Discharge, explosion, or use of nuclear device, weapon or material employing or involving nuclear fission, fusion, or radioactive force, whether in time of peace or war and regardless of who commits the act.

          b)   Seizure or destruction under quarantine or custom regulation or confiscation by order of any governmental or public authority.

m.   1.   The unlawful possession, use, release, discharge, dispersal or disposal of any bacteriological, viral, radioactive or similar agents or material regardless of who is responsible for the act, whether or not the act is certified as an act of terrorism pursuant to the federal Terrorism Risk Insurance Act,  and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto; or

     2.   The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act, whether or not the act is certified as an act of terrorism pursuant to the federal Terrorism Risk Insurance Act, and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto;

n.   Freezing of plumbing, heating or fire protection systems in vacant properties, when property is vacant for more than thirty (30) consecutive days, and any resulting ruptures and/or releases;

o.   Backing up of sewers or drains;

p.   Maintenance, repairs, or alterations, unless loss by a separate peril not otherwise excluded ensues, and then coverage shall be afforded only for loss, damage, costs, or expenses caused by the separate ensuing peril;

q.   Mold, moss, mildew, fungi, spores, bacterial infestation or any similar organism, wet or dry rot and extremes of temperature or humidity, whether directly or indirectly the result of a covered peril.  This exclusion applies, and is not limited to, the cost for investigation, testing, remediation services, Such loss, damage, costs, or expenses are excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss, or whether such loss is directly or indirectly, proximately or remotely, or in whole or in part caused by, the result of, contributed to or aggravated by any other peril.

     If loss otherwise covered by this POLICY occurs and the cost of removal of debris is increased due to the presence of rust, mold, moss, fungus, bacterial infestation, wet or dry rot or extremes of temperature or humidity, this POLICY will only be liable for the costs of debris removal which would have been incurred had no such factors been present in, on, or about the covered property to be removed, subject to the provisions of the Debris Removal Clause.

r.   EARTH MOVEMENT, as defined herein, unless endorsed hereon;

s.   FLOOD, as defined herein, unless endorsed hereon.

Includes copyrighted material of ISO Properties, Inc., used with its permission.

7. <u>ADDITIONAL EXCLUSIONS</u>:

a.  Fire Fighting Expense Exclusion Clause:

This POLICY shall not pay for any cost or expense in fighting fire.

b.  Pollution and Contamination Exclusion Clause:

This POLICY does not insure against loss or damage caused by or resulting from any of the following regardless of any cause or event contributing concurrently or in any other sequence to the loss:

1.  contamination;

2.  the actual or threatened release, discharge, dispersal, migration or seepage  of POLLUTANTS at an INSURED LOCATION during the Term of this POLICY unless the release, discharge, dispersal, migration, or seepage is caused by fire, lightning, leakage from fire protective equipment, explosion, aircraft, vehicles, smoke, riot, civil commotion or vandalism.  This POLICY does not insure off-premises cleanup costs arising from any cause and the coverage afforded by this clause shall not be construed otherwise.

c.  Off Premises Services Exclusion Clause:

This POLICY shall not pay for loss caused directly or indirectly by the interruption of utility services furnished to the described premises, such as electricity, steam, WATER, gas or refrigeration.

d.  Professional Fees Exclusion Clause:

This POLICY shall not pay for fees, costs or expenses of any professionals including but not limited to accountants, architects, auditors, engineers, attorneys, public adjusters, insurance agents or brokers, loss appraisers, loss consultants, or other professionals, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them.

e.  This POLICY shall not pay for:

1.  Delay or loss of use or market except as may be provided under TIME ELEMENT coverage if provided herein

2.  Enforcement of any ordinance or law regulating the construction, repair or demolition of any property insured hereunder, except as specifically stated herein or by endorsement;

3.  Fines or penalties incurred, sustained by or imposed on the Insured at the order of any Government Agency, Court, or other Authority arising from any cause whatsoever;

4.  Asbestos material removal, unless the asbestos itself is damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems;

5.  Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material; or

6.  Any governmental direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

8.  <u>DEBRIS REMOVAL CLAUSE</u>:  (Applies only to insurance covering direct property loss.)

This POLICY will pay the necessary expense incurred by the Insured during the Term of this POLICY for the removal of debris of the property covered hereunder from premises covered hereunder which may be occasioned by insured loss caused by any of the perils insured against in this POLICY.  The COMPANY's total liability in any one OCCURRENCE under this POLICY for removal of debris shall in no event exceed the Sublimit specified in the Declarations.  This provision does not increase any amounts or limits of insurance in this POLICY.  In no event shall the combined loss for property and debris removal exceed the amount of insurance applying under the POLICY to the property damaged.

Furthermore, the COMPANY shall not be liable for more than the proportion of such debris removal expense as the amount of insurance under this POLICY bears to the total amount of insurance on the property covered, whether or not all such insurance includes this clause, or is collectible or not.  This insurance will not pay, under this clause, expenses to:

1.  Remove, or extract CONTAMINANTS or POLLUTANTS, or debris defined as a CONTAMINANT or POLLUTANT, from land or WATER, nor remove, restore or replace polluted or contaminated land or WATER; or

2.  Remove any property because of the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, demolition, occupancy, operation or other use of such property; or

3.  Remove or transport any property or debris to a site for storage, disposal, or decontamination, or the cost to store, dispose of, or decontaminate any such property or debris, required because the property or debris is affected by Contaminations or POLLUTANTS, whether or not such removal, transport, or decontamination is required by law, ordinance or regulation; or

4.  Remove any property or debris which discharges, releases, or escapes into or upon any watercourse or body of WATER above or below ground, on or off the insured premises.

No liability shall exist under this Debris Removal Clause unless such expenses are reported in writing to the COMPANY within one hundred and eighty (180) days of the date of direct loss.

9.  <u>PROTECTION AND PRESERVATION OF PROPERTY</u>:

In case of actual physical loss or damage of the type insured against by this POLICY, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Property insured hereunder shall be added to the total direct physical loss or damage otherwise recoverable under this POLICY and be subject to the applicable Deductible.

The COMPANY's total liability in any one OCCURRENCE under this provision shall in no event exceed the Sublimit specified in the Declarations. This provision does not increase any amounts or limits of insurance in this POLICY.

10.  <u>VALUATION</u>:

In case of loss, the basis of adjustment, unless otherwise endorsed hereon, shall be as follows at time and place of loss:

a.  FINISHED STOCK sold but not delivered, at the Insured's net selling price of such property less all discounts and unincurred expenses to which such property would have been subject had no loss occurred. FINISHED STOCK not sold, at REPLACEMENT COST.

    b.  RAW STOCK and STOCK IN PROCESS, at REPLACEMENT COST with like kind and quality;

    c.  Buildings and other structures, at ACTUAL CASH VALUE unless otherwise endorsed hereon;

    d.  Machinery, equipment and any other insured property not otherwise provided for at ACTUAL CASH VALUE unless otherwise endorsed hereon;

    e.  Catalyst at ACTUAL CASH VALUE;

11. <u>LIMITATIONS</u>:

    a.  Books and Records:
    This POLICY limits coverage on books of account, abstracts, drawings, card index systems and other records (except film, tape, disk, drum, cell and other magnetic recording and storage media for electronic data processing), to an amount not exceeding the cost of blank books, cards or other blank materials plus the cost of labor incurred by the Insured for transcribing or copying such records; and on film, tape, disk, drum, cell and other magnetic recording and storage media for electronic data processing to an amount not exceeding the cost of such media in unexposed or blank form.

    b.  Employee's Tools and Wearing Apparel:

    This POLICY also covers tools and wearing apparel of officers and employees, except in dwellings and living quarters, while on premises insured hereunder, subject to a limit of two hundred fifty dollars ($250.00) on said property of any officer or employee in any one OCCURRENCE.

12. <u>CONDITIONS</u>:

    a.  Abandonment:

    There can be no abandonment to this COMPANY of the property insured.

    b.  Appraisal:

    If the Insured and this COMPANY fail to agree on the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty (20) days of such demand. The appraisers shall select a competent and disinterested umpire, and, if failing for twenty (20) days to agree upon such umpire, then, on the request of the Insured or this COMPANY, such umpire shall be selected by a judge of a state or federal court of record in the state in which the damaged property is located. The appraisers shall then appraise the loss, stating separately the loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this COMPANY shall determine the amount of loss and shall be binding and final. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally. The COMPANY shall not be held to have waived any of its rights by any act relating to appraisal.

    c.  Brands and Labels:

    If branded or labeled MERCHANDISE covered by this POLICY is damaged and the COMPANY elects to take all or any part of such MERCHANDISE at the value established by the provisions of this POLICY, the Insured may, at his own expense, stamp "salvage" on the MERCHANDISE or its containers or may remove or obliterate the brands or labels, if such stamps, removal or obliteration will not physically damage the MERCHANDISE.

**Includes copyrighted material of ISO Properties, Inc., used with its permission.**

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 46 of 126

d.  Bridge Wording

Whenever used in this POLICY, the terms, "we", "our", "you", and "your" are hereby changed to "the COMPANY", "the COMPANY's", "the Insured", and "the Insured's".

e.  Choice of Law and Choice of Venue:

No suit, action, or proceeding regarding this POLICY for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this POLICY. The COMPANY agrees that any suit, action, or proceeding against it for recovery of any claim under this POLICY shall not be barred if commenced within the time prescribed in the statutes of the State of New York. Any suit, action, or proceeding against the COMPANY must be brought solely and exclusively in a New York state court or a federal district court sitting within the State of New York. The laws of the State of New York shall solely and exclusively be used and applied in any such suit, action, or proceeding, without regard to choice of law or conflict of law principles.

f.  Company's Options:

It shall be optional for this COMPANY to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind, size, capacity and quality within a reasonable time, on giving notice of its intention to do so within thirty (30) days after the receipt of proof of loss herein required.

g.  Conflict of Wording:

If there is conflict between the specific sections or endorsements and general conditions in this POLICY, the conditions of the specific sections or endorsements shall prevail.

h.  Governmental Action Clause:

This COMPANY shall be liable for acts of destruction at the order of civil authority at the time of and for the purpose of preventing the spread of fire, provided such fire did not originate from any perils herein specifically excluded.

i.  Loss Clause:

It is a condition of this POLICY that in case of loss occurring hereunder, the amount of such loss shall be automatically reinstated after its OCCURRENCE without payment of additional premium for such reinstatement with the exception of loss caused by perils which are subject to annual aggregate sublimits as noted on the Declarations of this POLICY.

j.  Machinery:

In the event of loss of or damage to machinery consisting, when complete for sale or use, of several parts, the Insurer shall only be liable for the value of the part(s) lost or damaged.

k.  Pair and Set:

In the event of loss of or damage to:

(a) any article or articles which are a part of a pair or set, the measure of loss of or damage to such article or articles shall be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

(b) any part of property covered consisting, when completed for use, of several parts, the COMPANY shall be liable for the value of the part lost or damaged.

Includes copyrighted material of ISO Properties, Inc., used with its permission.

l.  Permission Clause:

Permission is hereby granted: 1) to do work and to make such changes in the use or occupancy of the premises as is usual or incidental to the business of the Insured, 2) to make alterations, additions, improvements and repairs, 3) to shut down or cease operations, and for individual buildings or units to remain vacant or unoccupied without limit of time, provided fire protection, watchmen and alarm services are maintained.  But this COMPANY, unless endorsed hereon, shall not be liable for loss occurring:

1. when the entire premises or plant has ceased operations or been unoccupied or vacant for a period exceeding thirty (30) consecutive days, or
2. while the hazard is increased by any means within the control or knowledge of the insured.

m.  Requirements in Case Loss Occurs:

Every loss hereunder shall be reported in writing as soon as practicable with full particulars to the COMPANY.  The Insured shall protect the property from further damage and separate the damaged and undamaged personal property; put it in the best possible order; furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, value and amount of loss claimed, and within sixty (60) days after the loss, unless such time is extended in writing by this COMPANY, the Insured shall render to this COMPANY a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1.  The time and origin of the loss;

2.  The interest of the Insured and of all others in the property;

3.  The value of each item thereof and the amount of loss thereto;

4.  All encumbrances thereon;

5.  All other contracts of insurance whether valid or not, covering any of said property;

6.  Any changes in the title, use, occupation, LOCATION, possession or exposures of said property since the issuing of this POLICY;

7.  By whom and for what purposes any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground.

8.  If this POLICY provides any TIME ELEMENT coverage, the Insured shall, in addition to the above, also give immediate written notice to this COMPANY of any TIME ELEMENT loss and protect the property from further damage that might result in extension of the period of interruption.

9.  Within sixty (60) days following the date of damage to or destruction of the real or personal property described, unless such time is extended in writing by this COMPANY, the Insured shall render to this COMPANY a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

a.  The time and origin of the property damage or destruction causing the interruption of business;

b.  The interest of the Insured and of all others in the business;

c.  All other contracts of insurance, whether valid or not, covering in any manner the loss insured against by this POLICY;

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 48 of 126

d.    Any changes in the title, nature, LOCATION, encumbrance, or possession of said business since the issuing of this POLICY;

e.    By whom and for what purpose any building herein described and the several parts thereof were occupied at the time of damage or destruction, and shall furnish a copy of all the descriptions and schedules in all policies, and the actual amount of TIME ELEMENT value and loss claimed, accompanied by detailed exhibits of all values, costs, and estimates upon which such amounts are based.

10.    The Insured shall furnish a copy of all the descriptions and schedules in all policies and if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged.

11.    The Insured, as often as may be reasonably required, shall exhibit to any person designated by this COMPANY all that remains of any property herein described, and shall submit, and insofar as is within its power, cause its employees and others to submit to examinations under oath by any person named by this COMPANY and subscribed to the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this COMPANY or its representative, and shall permit extracts and copies thereof to be made.

12.    The Insured shall cooperate with the COMPANY and upon this COMPANY'S request shall attend hearings and trials and shall assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses in conduct of suits.

n.    Subrogation:

1.    This insurance shall not be invalidated if the Insured in writing has waived or may hereafter, but prior to the OCCURRENCE of any loss covered hereunder, waive its right of recovery from any firm, corporation or individual, for loss or damage covered hereunder and this COMPANY expressly waives subrogation against any subsidiary or affiliated COMPANY of the Insured.

2.    In the event of any payment under this Policy, the COMPANY shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the COMPANY to secure such right. The COMPANY will act in concert with any other interests concerned, i.e., the Insured and any other insurer participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

o.    Salvage and Recoveries:

When, in connection with any loss hereunder, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be refigured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

PR 002 (02/19)                                                      Page 11 of 16

Includes copyrighted material of ISO Properties, Inc., used with its permission.

p.   Titles of Paragraphs:

The several titles to the various paragraphs of this form (and of endorsements and supplemental contracts, if any, as now or hereafter attached to this POLICY) are inserted solely for the convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

13.   <u>DEFINITIONS</u>:

Unless otherwise stated, the Definitions below apply wherever used in this POLICY.

A.   ACTUAL CASH VALUE

The term "ACTUAL CASH VALUE" shall mean REPLACEMENT COST subject to a deduction for deterioration, depreciation and obsolescence.  ACTUAL CASH VALUE applies to valuation of insured property regardless of whether that property has sustained partial or total loss or damage.

B.   COMPANY

The term "COMPANY" shall mean the Insurer providing this insurance "POLICY" as specified on the Declarations attached.

C.   COMPUTER

The term "COMPUTER" shall mean a programmable or programmed machine that responds to a specific set of instructions in a well-defined manner and can execute a pre-recorded list of instructions.  It includes but is not limited to mainframes, servers, workstations and portable COMPUTERs, personal information managers, wide and local area network hardware, electronic and electromechanical equipment, data processing equipment, electronic controls for machinery, electronically programmed memory chips, and electronically controlled communication equipment.

D.   DATA PROCESSING SYSTEMS

The term "DATA PROCESSING SYSTEMS" shall include storage equipment (hardware), transferring equipment, COMPUTER systems, telecommunications systems or electronic control equipment, including component parts,, owned by the Insured or leased, rented or property of others for which the Insured may be liable.

E.   DATA PROCESSING MEDIA, meaning all forms of data, converted data and/or programs and/or instructions and/or media vehicles employed in the Insured's data processing operations, and blank magnetic recording or storage media (software) for electronic data processing including film, tape, disc, drum, or cells, being property of the Insured or property of others for which the Insured may be liable.

F.   EARTH MOVEMENT

The term "EARTH MOVEMENT" shall mean earthquake, landslide, subsidence, volcanic eruption, tsunami or any other earth movement whether natural or man-made, except MUDSLIDE or MUDFLOW caused by accumulation of WATER on or under the ground.

Loss or damage caused by EARTH MOVEMENT shall include all covered loss or damage to covered property at an INSURED LOCATION resulting directly or indirectly from EARTH MOVEMENT, however, physical loss or damage by fire, explosion, or sprinkler leakage resulting from EARTH MOVEMENT as defined herein is not to be considered to be loss by EARTH MOVEMENT.

Case 1:21-cv-05041  Document 1-1  Filed 06/08/21  Page 50 of 126

G.  FINISHED STOCK

The term "FINISHED STOCK" shall mean stock manufactured by the Insured or manufactured by others for the account of the Insured which is ready for packing, shipment or sale, NORMAL to the business of the Insured.

H.  FLOOD

The term "FLOOD" shall mean rising WATER, surface WATER, waves, tidal WATER, high WATER, tidal wave other than tsunami, rising, overflowing or any breach of streams, rivers, lakes, reservoirs, or other natural or man-made bodies of WATER; STORM SURGE; or spray from any of the foregoing; the unusual and rapid accumulation or runoff of surface waters from any source; release of WATER held by a dam, levee or dike or by a WATER or FLOOD control device; MUDFLOW; MUDSLIDE; all whether driven by WIND or not, and regardless of any other cause of event or loss whatsoever contributing concurrently or in any sequence to produce the loss, directly or indirectly, and regardless of whether the event or loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these.  However, physical loss or damage by fire, explosion or sprinkler leakage resulting from FLOOD as defined herein is not to be considered to be loss by FLOOD.

I.  INSURED LOCATION(S)

The term "INSURED LOCATION(S)" as used in this POLICY shall mean any LOCATION listed on the latest SCHEDULE OF LOCATIONS submitted to and accepted by the COMPANY as of the POLICY inception date, as specified in the Declarations.  INSURED LOCATION(S) includes the area within one thousand (1,000) feet of such LOCATION, all within the Coverage Territory.

If not so specified in the SCHEDULE OF LOCATIONS, a "LOCATION" is a building, yard or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty  (50) feet wide.  Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of defining a LOCATION.

The term "LOCATIONS" means more than one LOCATION.

J.  LOSS OF EARNINGS

The term "LOSS OF EARNINGS" shall mean The ACTUAL LOSS SUSTAINED by the Insured resulting directly from such necessary interruption of business, but not exceeding the reduction in GROSS EARNINGS less charges and expenses which do not necessarily continue during the interruption of business.

K.  MERCHANDISE

The term "MERCHANDISE" shall mean goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

L.  MONTH

The term "MONTH" shall mean thirty (30) consecutive calendar days.

M.  MUDFLOW

The term "MUDFLOW" shall mean a river of liquid and flowing mud on the surfaces of normally dry land areas as when earth is carried by a current of WATER.

Includes copyrighted material of ISO Properties, Inc., used with its permission.

N. MUDSLIDE

The term "MUDSLIDE" shall mean a saturated soil mass moving by liquidity down a slope.

O. NORMAL

The term "NORMAL" shall mean the condition that would have existed had no physical loss or damage occurred.

P. OCCURRENCE

The term "OCCURRENCE" shall mean a loss, incident, or series of losses or incidents immediately arising out of a single event or originating cause and includes all resultant or concomitant insured losses, except as modified herein.

1.    In respect of losses hereunder arising from WIND, the term OCCURRENCE shall mean the sum total of all the Insured's losses sustained during any one period of seventy-two (72) consecutive hours commencing within the Term of this POLICY under the foregoing perils arising out of or caused by the same atmospheric disturbance.

2.    In respect of losses hereunder arising from FLOOD, EARTH MOVEMENT, riot, riot attending a strike or civil commotion, the term OCCURRENCE  shall mean the sum total of all the Insured's losses sustained during any one period of seventy-two (72) consecutive hours commencing within the Term of this POLICY.

As respects all the foregoing, the Insured may elect the moment from which any period of seventy-two (72) consecutive hours shall be deemed to have commenced, this COMPANY being responsible only for its proportion of the loss to the Insured in respect to the said elected period of seventy-two (72) hours. No single elected seventy-two (72) hour period shall overlap any other elected seventy-two (72) hour period

This COMPANY shall not be liable for any loss occurring before the effective date and time of this POLICY, nor for any loss occurring after the expiration date and time of this POLICY.  The expiration of the POLICY shall not reduce the seventy-two (72) hour period.

Q. ORDINARY PAYROLL EXPENSES

The term "ORDINARY PAYROLL EXPENSES" shall mean payroll expenses for all employees of the Insured except: officers; executives; department managers; and employees under contract. Payroll expenses shall include: payroll; employee benefits, if directly related to payroll; FICA payments and union dues paid by the Insured; and workers' compensation premiums.

R. PERIOD OF INDEMNITY

The term "PERIOD OF INDEMNITY" shall mean the period of time that:

(a)    Begins with the date of direct physical loss or damage by any of the perils covered herein, at an INSURED LOCATION; and
(b)    Ends on the date when the damaged or destroyed property at the INSURED LOCATION should be repaired, rebuilt or replaced with the exercise of due diligence and dispatch.

The PERIOD OF INDEMNITY shall not be limited by the date of termination of this POLICY.

S. POLICY

The term "POLICY" shall mean all parts of the document to which this form is attached including, but not limited to, the Declarations, conditions, endorsements and this property form.

T. POLLUTANT or CONTAMINANTS

The term "POLLUTANTS" or "CONTAMINANTS" shall mean any solid, liquid, gaseous or thermal irritant or CONTAMINANT including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, virus, waste, (waste includes materials to be recycled, reconditioned or reclaimed) or hazardous substances as listed in the Federal WATER Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the U.S. Environmental Protection Agency.

U. RAW STOCK

The term "RAW STOCK" shall mean material in the state in which the Insured receives it for conversion by the Insured into FINISHED STOCK.

V. REPLACEMENT COST

The term "REPLACEMENT COST" shall mean the lesser of the cost to repair, rebuild or replace the lost or damaged property with:

1) identical property or

2) property of like, kind and quality

on the same premises and intended for the same occupancy and use, determined at the time and place of loss, without deduction for deterioration, depreciation or obsolescence.

W. STOCK IN PROCESS

The term "STOCK IN PROCESS" shall mean RAW STOCK which has undergone any aging, seasoning, mechanical or other process of manufacture at the LOCATION(s) herein described but which has not become FINISHED STOCK.

X. STORM SURGE

The term "STORM SURGE" shall mean rising WATER, surface WATER, waves, tidal WATER, tidal wave other than tsunami; rising, overflowing or any breach of streams, rivers, lakes, reservoirs, or other bodies of WATER; or spray from any of the foregoing when driven by WIND.

Y. THE 100% PLANT BUSINESS INTERRUPTION DAILY VALUE

The term "THE 100% PLANT BUSINESS INTERRUPTION DAILY VALUE" shall mean the actual amount of GROSS EARNINGS, less charges and expenses which do not necessarily continue during the interruption of business, that would have been earned had no loss or damage occurred, divided by the actual number of working days, had no loss or damage occurred during the period of Interruption of the business with due consideration being given to the experience of the business before the date of loss or damage and the probable experience thereafter had no loss or damage occurred.

Includes copyrighted material of ISO Properties, Inc., used with its permission.

Z. TIME ELEMENT

The term "TIME ELEMENT" shall be defined as the actual loss sustained due to the necessary interruption of the Insured's NORMAL business operations including but not limited to, loss described in the <u>BUSINESS INTERRUPTION SECTION</u>, if attached, and the following TIME ELEMENT extensions, if endorsed hereon: Contingent Business Interruption, Contingent Extra Expense, Extra Expense, Ingress/Egress, Leasehold Interest, Rental Value, Off Premises Power Business Interruption, but this definition shall not otherwise expand or modify the coverage, if any, provided by this POLICY or its Endorsements.

AA. WATER

The term "WATER" shall mean WATER, but not WATER at any INSURED LOCATION which is contained within any type of processing tank, cistern, pond, piping, or other process equipment.

BB. WIND

The term "WIND," shall mean tornado, tempest, cyclone, hurricane, windstorm or hail.

PR 002 (02/19)                                                                    Page 16 of 16

Includes copyrighted material of ISO Properties, Inc., used with its permission.

# **PROPERTY COVERAGE FORM**
# **PROPERTY SECTION**

Interest and Property Insured**:**

This COMPANY agrees to insure subject to all the terms, conditions, limitations, exclusions and stipulations of this POLICY, except as hereinafter excluded, and excluding all property named in the <u>STOCK PROVISIONAL SECTION</u>, if included herein:

All buildings, tanks and structures of every description, and all contents therein and property of every description upon the premises as now or hereafter constituted; all whether owned by the Insured or Property of Others in the Insured's care, custody or control, or on consignment or on commission or held in storage or for repairs or sold but not delivered or removed; all comprised a part of or appertaining to the operations of the Insured at INSURED LOCATION(S).

This POLICY shall also cover loss or damage, if any, to improvements and betterments to buildings. In the event of loss or damage, this COMPANY agrees to accept and consider the Insured to be the sole and unconditional owner of improvements and betterments, any contract or lease the Insured may have made to the contrary notwithstanding.

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 55 of 126

# PROPERTY COVERAGE FORM

# BUSINESS INTERRUPTION SECTION

1.  Interest and Property Insured:

    This COMPANY agrees to insure subject to all the terms, conditions, limitations, exclusions and stipulations of this POLICY:

    Loss directly resulting from necessary interruption of the Insured's NORMAL business operations caused by direct physical loss or damage to real or personal property covered herein, except FINISHED STOCK, and arising from a peril insured against hereunder and occurring during the term of this POLICY; all while located at INSURED LOCATIONS.

    Unless and until liability has been admitted or a claim paid for direct physical damage to or destruction of property insured under this POLICY, no claim shall be payable nor any advance be due for any business interruption loss. This Condition shall not apply if no such payment shall have been made nor liability admitted solely owing to the operation of a "Deductible" in this POLICY which excludes liability for losses below a specified amount.

    Further, the payment of a claim or admission of liability for loss due to direct physical loss or damage to property insured under this POLICY is not in and of itself, evidence that the Insured has sustained a business interruption loss under this Section.

2.  ACTUAL LOSS SUSTAINED:

    In the event of direct physical loss or damage to covered property by a peril insured against, this COMPANY shall be liable for the ACTUAL LOSS SUSTAINED by the Insured resulting directly from the necessary interruption of business, but not exceeding the reduction in GROSS EARNINGS less charges and expenses which do not necessarily continue during the interruption of business. Loss under this Section shall be subject to the PERIOD OF INDEMNITY.

    The PERIOD OF INDEMNITY shall not be limited by the date of termination of this POLICY. Due consideration shall be given to the continuation of NORMAL charges and expenses, including ORDINARY PAYROLL EXPENSE, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the date of damage or destruction.

3.  Resumption of Operations:

    It is a condition of this insurance that if the Insured could reduce the loss resulting from interruption of business:

    1.  by complete or partial resumption of operation of the property herein described, whether damaged or not; or

    2.  by making use of MERCHANDISE or other property at any INSURED LOCATION; or

    3.  by making use of stock (RAW, IN PROCESS or FINISHED) at any INSURED LOCATIONS;

    such reduction shall be taken into account in arriving at the amount of loss hereunder.

**PR 004 (02/12)**                                                         **Page 1 of 3**

4. Expense Related to Reducing Loss:

Applicable only to this Section, this POLICY also covers such expenses as are necessarily incurred for the purpose of reducing loss under this POLICY (except expense incurred to extinguish a fire) and such expenses, in excess of NORMAL, as would necessarily be incurred in replacing any FINISHED STOCK used by the Insured to reduce loss under this POLICY; but in no event shall the amount payable under this coverage exceed the amount by which the loss otherwise payable under this POLICY is thereby reduced.  Such expenses shall not be subject to the application of the Coinsurance Clause.

5. GROSS EARNINGS:

For the purpose of this Section "GROSS EARNINGS" are defined as the sum of:

1. Total net sales values of production;

2. Total net sales of MERCHANDISE; and

3. Other earnings derived from operation of the business;

    less the cost of:

4. RAW STOCK from which such production is derived;

5. Supplies consisting of materials consumed directly in the conversion of such RAW STOCK into FINISHED STOCK or in supplying the service(s) sold by the Insured;

6. MERCHANDISE sold, including packaging materials therefore; and

7. Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract.

No other costs shall be deducted in determining GROSS EARNINGS.  In determining GROSS EARNINGS due consideration shall be given to the experience of the business before the date of damage or destruction and the probable experience thereafter had no loss occurred.

6. FINISHED STOCK:

This COMPANY shall not be liable for any loss resulting from damage to or destruction of FINISHED STOCK nor for the time required to reproduce said FINISHED STOCK.

7. Interruption by Civil or Military Authority:

This POLICY is extended to include, starting at the time of physical loss or damage, the actual loss sustained by the Insured, resulting directly from an interruption of business as covered hereunder, during the length of time, not exceeding the number of days shown under TIME LIMITS stated in the Declarations, when, as a direct result of damage to or destruction of property within one (1) statute mile of an INSURED LOCATION by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil or military authority.

8.  Additional Exclusions:

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Section:

This COMPANY shall not be liable for any increase of loss resulting from:

1.  Enforcement of any law ordinance or regulation whether Federal, State or Local regulating the construction, repair or demolition of buildings or structures; or

2.  Interference at the described premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of business; or

3.  The suspension, lapse or cancellation of any lease, license, contract or order unless such suspension, lapse or cancellation results directly from the interruption of business (and then this COMPANY shall be liable for only such loss as affects the Insured's earnings) during, and limited to, the PERIOD OF INDEMNITY covered under this Policy;


nor shall this COMPANY be liable for any other consequential or remote loss.

**PR 004 (02/12)**                                                                **Page 3 of 3**

Case 1:21-cv-05041 Document 1-1 Filed 06/08/21 Page 58 of 126

Endorsement No. ___1___ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# ACCOUNTS RECEIVABLE ENDORSEMENT

**A. COVERAGE:**

Subject to the all terms, conditions, limitations, exclusions and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover:

a. All sums due to the Insured provided the Insured is unable to affect collection thereof as a result of direct physical loss or damage by a peril insured against, to records of accounts receivable;

b. Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

c. Collection expense in excess of NORMAL collection cost and made necessary because of such loss or damage;

d. Other expenses, when reasonable incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

**B. LIMIT OF LIABILITY:**

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed **$The Sublimit specified in the Declarations**.

**C. REMOVAL:**

Such insurance as is afforded by this POLICY applies while the records of accounts receivable are being removed to and while at a place of safety because of imminent danger of loss or damage and while being returned from such place.

**D. ADDITIONAL EXCLUSIONS:**

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

This Endorsement does not insure against:

a. Loss due to bookkeeping, accounting or billing errors or omissions;

b. Loss, the proof of which (as to factual existence) is dependent upon an audit of records or an inventory computation, but this shall not preclude the use of such procedure in support of claim for loss which the Insured can prove, through evidence wholly apart therefrom, as due solely to a risk of loss to records of accounts receivable not otherwise excluded hereunder.

c. Loss due to alteration, falsification, manipulation, concealment, destruction or disposal of records of accounts receivable committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities, or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

**E. CONDITIONS:**

a. Recoveries:

After payment of loss, all amounts recovered by the Insured on accounts receivable for which the Insured has been indemnified shall belong and be paid to the COMPANY by the Insured up to the total amount of loss paid by the COMPANY, but all recoveries in excess of such amount shall belong to the Insured.

b.   Determination of Receivables; Deductions:

1.   When there is proof that a loss covered by this POLICY has occurred but the Insured cannot accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be based on the Insured's monthly statements and shall be computed as follows:

(a)   Determine the amount of all outstanding accounts receivable at the end of the same fiscal MONTH in the year immediately preceding the year in which the loss occurs.

(b)   Calculate the percentage of increase or decrease in the average monthly total of accounts receivable for the twelve MONTHS immediately preceding the MONTH in which the loss occurs, or such part thereof for which the Insured has furnished monthly statements to the underwriters as compared with such average for the same MONTHS for the preceding year;

(c)   The amount determined under (a) above, increased or decreased by the percentage calculated under (b) above, shall be the agreed total amount of accounts receivable as of the last day of the fiscal MONTH in which said loss occurs.

(d)   The amount determined under (c) above shall be increased or decreased in conformity with the NORMAL fluctuations in the amount of accounts receivable during the fiscal MONTHS involved, due consideration being given to the experience of the business since the last day of the last fiscal MONTH for which statement has been rendered.

2.   There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by receivables not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts that would normally have been uncollectible by the Insured. All unearned interest and service charges shall be deducted.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ___2___ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# AGREED AMOUNT ENDORSEMENT

## (BUSINESS INTERRUPTION)

Applying to <u>BUSINESS INTERRUPTION SECTION</u> Only:

In consideration of a Statement of GROSS EARNINGS filed with this COMPANY by the Insured and pursuant to the Coinsurance Clause in this Policy, the amount of **$The Sublimit specified in the Declarations**, shall represent the percentage specified on the Declarations of the value required for compliance with such Coinsurance Clause.

This Agreed Amount Endorsement is effective until **The Sublimit specified in the Declarations** and thereafter the terms and conditions of the Coinsurance Clause in this POLICY applying to the <u>BUSINESS INTERRUPTION SECTION</u> shall apply without modification. It is agreed however, that the Insured is given an additional thirty (30) days in which to file the above mentioned Statement of GROSS EARNINGS, and the Agreed Amount Provision is extended for this thirty (30) day period.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

PR 007 (02/12)                                                                    **Page 1 of 1**

Endorsement No. ___3___ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# AGREED AMOUNT ENDORSEMENT

## (PROPERTY)

Applying to <u>PROPERTY SECTION</u> Only:

In consideration of a Statement of Values filed with this COMPANY by the Insured and pursuant to the Coinsurance Clause in this POLICY applying to the Property Section, the amount of **<u>$The Sublimit specified in the Declarations</u>** , shall represent the percentage specified on the Declarations of the value required for compliance with such Coinsurance Clause.

This Agreed Amount Endorsement is effective until **The Sublimit specified in the Declarations** and thereafter the terms and conditions of the Coinsurance Clause in this POLICY applying to the <u>PROPERTY SECTION</u> shall apply without modification. It is agreed however, that the Insured is given an additional thirty (30) days in which to file the above mentioned Statement of Values, and the Agreed Amount Provision is extended for this thirty (30) day period.

PR 008 (02/12) **Page 1 of 1**

Endorsement No. ___4___ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# BIOLOGICAL, CHEMICAL OR NUCLEAR EXCLUSION

The following exclusion is added to this policy; supersedes any term, provision or endorsement to the contrary in this policy; and applies notwithstanding such term, provision or endorsement:

- BIOLOGICAL, CHEMICAL OR NUCLEAR EXCLUSION

  This policy does not insure against any loss, damage, cost or expense caused by or resulting from any of the following, regardless of any other cause or event contributing concurrently or in any sequence thereto:

  1.  The unlawful possession, use, release, discharge, dispersal or disposal of any chemical, bacteriological, viral, radioactive or similar agents or material regardless of who is responsible for the act, whether or not the act is certified as an act of terrorism pursuant to the federal Terrorism Risk Insurance Act, and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto; or

  2.  The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act, whether or not the act is certified as an act of terrorism pursuant to the federal Terrorism Risk Insurance Act, and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

**Page 1 of 1**

Endorsement No. ____5____ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# BOILER AND MACHINERY ENDORSEMENT

**1.      INSURING AGREEMENT:**

Subject to all additional terms, conditions, limitations, exclusions, and stipulations stated herein this POLICY is extended to cover:

(a)      direct physical loss or damage to property of the Insured and to property of others in the care, custody or control of the Insured;

(b)      the loss and expense resulting from the necessary interruption of business; if a <u>BUSINESS INTERRUPTION SECTION</u> and/or any other TIME ELEMENT endorsements are attached and then such provisions hereby apply;

resulting from an ACCIDENT to an OBJECT at an INSURED  LOCATION.

When used in this Endorsement, the following definitions shall apply:

**"OBJECT(S)"** shall mean any boiler, fired or unfired pressure vessel, refrigerating or air conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

**"ACCIDENT(S)"** shall mean a sudden and accidental breakdown of an OBJECT or a part thereof which manifests itself at the time of its OCCURRENCE by physical damage that necessitates repair or replacement of the OBJECT or part thereof.

**2.      LIMIT OF LIABILITY:**

The COMPANY's total liability arising out of any One ACCIDENT under this Endorsement, shall in no event exceed **$The Sublimit specified in the Declarations**.

If an initial ACCIDENT causes other ACCIDENTS, all will be considered "One ACCIDENT".  All ACCIDENTS at any one INSURED LOCATION which manifest themselves at the same time and are the result of the same cause will be considered "One ACCIDENT."

**3.      CONDITIONS:**

With respect to OBJECTS insured by the provision of this Endorsement, the following additional

Condition shall apply:

**<u>Suspension</u>**

Upon the discovery of a dangerous condition with respect to any OBJECT, any representative of the COMPANY may immediately suspend the insurance with respect to an ACCIDENT to said OBJECT by written notice mailed or delivered to the Insured at the address of the Insured, or at the INSURED LOCATION of the OBJECT.  Insurance so suspended may be reinstated by the COMPANY, but only by an Endorsement issued to form a part of this POLICY.  The Insured will be allowed the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.

**4.      SUBLIMITS OF COVERAGE:**

a.      **<u>Ammonia Contamination Coverage</u>**

This POLICY is extended to cover loss, including salvage expense, or damage by ammonia contacting or permeating property under refrigeration or in process requiring refrigeration, resulting from any One ACCIDENT to one or more OBJECTS subject to a limit of $**The Sublimit specified in the Declarations** any One ACCIDENT This limit is part of and not in addition to the Limit of Liability.

b.  **Expediting Expenses Coverage**

This POLICY is extended to cover the reasonable extra cost to make temporary repair, expedite permanent repairs and expedite permanent replacement of property covered by this Endorsement, including overtime and the extra cost of express or other rapid means of transportation when loss to such property results from damage as insured against by this Endorsement, all subject to a limit of $**The Sublimit specified in the Declarations** any One ACCIDENT.  This limit is part of and not in addition to the Limit of Liability.

c.  **Consequential Damage**

This POLICY is extended to cover loss to property of the Insured and loss to property of others for which the Insured shall become legally obligated to pay when such loss is due to spoilage from lack of power, light, heat, steam, or refrigeration resulting solely from a ACCIDENT to an OBJECT, subject to a limit of $**The Sublimit specified in the Declarations** any One ACCIDENT. This limit is part of and not in addition to the Limit of Liability.

d.  **Hazardous Substances Coverage**

It is agreed that, if, as a result of an ACCIDENT, any property is damaged, contaminated, or polluted by a substance declared by a governmental agency to be hazardous to health, the COMPANY shall be liable under the POLICY for the additional expenses incurred for cleanup, repair or replacement, or disposal of that damaged, contaminated or polluted property.  The COMPANY'S total liability for additional expenses shall not exceed $**The Sublimit specified in the Declarations** any One ACCIDENT. This limit is part of and not in addition to the Limit of Liability.

As used here, "additional expenses" shall mean expenses incurred beyond those for which the COMPANY would have been liable if no substance hazardous to health had been involved in the ACCIDENT.

e.  **Water Damage Coverage**

This POLICY is extended to cover loss, including salvage expense, to property damaged by WATER, resulting from any One ACCIDENT shall not exceed $**The Sublimit specified in the Declarations** any One ACCIDENT.  This limit is part of and not in addition to the Limit of Liability.

5.  **ADDITIONAL EXCLUSIONS:**

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

A.  The following losses are not insured under this Endorsement:

1)  Breakdown of any structure or foundation (other than a bedplate of a machine) supporting an OBJECT or any part thereof, not caused by an ACCIDENT to the OBJECT;

2)  Breakdown of any boiler setting, insulating or refractory material not caused by an ACCIDENT to the OBJECT;

3)  Breakdown of well casings, penstocks or draft tubes;

4)      Breakdown of OBJECTS manufactured or held by the Insured for sale to others;

5)      Breakdown of catalyst not caused by an ACCIDENT to the OBJECT containing such catalyst or any other insured OBJECTS;

6)      Breakdown of any oven, stove or furnace;

7)      Breakdown of any sewer piping, any underground gas piping, any piping forming a part of a sprinkler system or any water piping other than:

   (a)      feed water piping between any boiler and its feed pumps or

            injectors,

   (b)      boiler condensate return piping, or

   (c)      WATER piping forming a part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes;

8)      Breakdown of an OBJECT until such time as said OBJECT has been installed and completely tested at an INSURED LOCATION. For the purposes of this insurance, "completely tested" shall mean that said OBJECT has operated at an INSURED LOCATION in the capacity for which it was designed as part of the Insured's NORMAL production process or processes. Notwithstanding the above coverage under this Agreement shall apply to any newly installed OBJECT having a fair market value of $1,000,000. or less and to any spare or replacement OBJECT or having parts thereof;

9)      An ACCIDENT to any OBJECT while it is being maintained or altered if said ACCIDENT is a direct result of said maintenance or alterations. However, if an ACCIDENT otherwise insured hereunder subsequently ensues, then the COMPANY shall be liable for such ACCIDENT. Any opening, closing or transporting of an OBJECT shall not be considered a part of any maintenance or alterations;

10)     An ACCIDENT to any OBJECT utilizing sulfur dioxide or hydrogen sulfide gas as respects:

   (a)      loss or damage resulting from corrosion anywhere following said ACCIDENT,

   (b)      loss or damage to catalyst caused by steam or WATER contacting or permeating the said catalyst following said ACCIDENT, and

   (c)      payment under any BUSINESS INTERRUPTION SECTION or Extra Expense Endorsement forming a part of this POLICY, for any time during which the resumption of business is in anyway curtailed, delayed or prevented because of loss or damage of the kinds referred to in the preceding Sections (a) and (b);

11)     Breakdown of any vacuum tube or gas tube; and

12)     Breakdown of any electronic computer or electronic data processing equipment, unless used to operate one or more insured "OBJECTS", unless endorsed hereon;

13)     Any increase in loss caused by or resulting from the enforcement of any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alteration, use, operation, construction or installation. As used here, increase in loss also includes expenses incurred beyond those for which we would have paid

if no substance declared to be hazardous to health by a governmental agency had been involved in the "ACCIDENT";

**B.** As respects this Endorsement, ACCIDENT shall not include loss:

1) From depletion, deterioration, corrosion or erosion, wear and tear, leakage at any valve, fitting, shaft seal, gland packing, joint or connection; the functioning of any safety or protective device; nor shall ACCIDENT mean the breakdown of any OBJECT while it is undergoing hydrostatic, pneumatic, gas pressure, or insulation breakdown tests, or is being dried out;

2) From fire concomitant with or following an ACCIDENT or from the use of WATER or other means to extinguish fire (as respects any electrical machine or apparatus or gas turbine), this section is changed to read: "from fire outside said electrical machine or apparatus or gas turbine concomitant with or following an ACCIDENT or from the use of WATER or other means to extinguish fire";

3) From an ACCIDENT caused directly or indirectly by fire or from the use of WATER or other means to extinguish fire;

4) From a combustion explosion outside the OBJECT concomitant with or following a ACCIDENT;

5) From an ACCIDENT caused directly or indirectly by a combustion explosion outside the OBJECT;

6) As a respects any boiler of the chemical recovery type, from an explosion within the furnace of any such boiler or within the passages from the furnace to the atmosphere whether or not such explosion (a) is contributed to or aggravated by an ACCIDENT to any part of said boiler that contains steam or WATER, or (b) is caused in whole or in part, directly or indirectly, by an ACCIDENT to any OBJECT or part thereof;

7) (a) From an ACCIDENT in whole or in part caused by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or

(b) From nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to or aggravated by an ACCIDENT;

nor shall the COMPANY be liable for any loss covered in whole or in part by a contract of insurance, carried by the Insured, which also covers any hazard or peril of nuclear reaction or nuclear radiation, or radioactive contamination.

**C.** Notwithstanding any provisions in the POLICY or its other Endorsements to the contrary, the COMPANY assumes no liability under this Endorsement for any loss:

1) From an ACCIDENT caused directly or indirectly by EARTH MOVEMENT; or

2) From the explosion of accumulated gases or unconsumed fuel within the fire box, or combustion chamber, or any fired vessel or within the flues which conduct the gases of combustion there from;

3) From FLOOD, unless an ACCIDENT ensues and the COMPANY shall then be liable under this Endorsement only for loss from such ensuing ACCIDENT; and

4)      From explosion of an OBJECT other than:

    (a)      any steam boiler, steam piping, steam turbine, gas turbine, steam engine, or

    (b)      any machine or electrical apparatus when such loss is caused by centrifugal force or mechanical breakdown.

**D.**      With respect to an ACCIDENT to an OBJECT, liability for loss to any catalyst shall not exceed the ACTUAL CASH VALUE thereof at the time of said loss.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ___6___   Additional Premium _____   Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# BUSINESS INTERRUPTION EXTENDED PERIOD OF

# INDEMNITY ENDORSEMENT

Extending the Period of Indemnity under the Business Interruption Section

This POLICY is extended to cover, in the event of direct physical loss or damage to covered property by a peril insured against, the ACTUAL LOSS SUSTAINED by the Insured resulting directly from the necessary interruption of business, as covered by this Policy:

1.   for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred; and

2.   commencing with the date on which the liability of this COMPANY for loss resulting from interruption of business would terminate if this endorsement has not been attached to this POLICY.

but in no event for more than the <u>number of consecutive calendar days specified in the Declarations</u> from said commencement date.

The liability under this Endorsement shall not exceed that proportion of any loss which the amount of insurance under this POLICY bears to all insurance, whether collectible or not, covering in any manner the loss insured against by this POLICY, whether or not  such insurance includes this or a similar extension of coverage.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any time periods, amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

**PR 013 (02/12)**                                                                                     **Page 1 of 1**

Endorsement No. ____7____ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# COURSE OF CONSTRUCTION ENDORSEMENT

**A.    COVERAGE:**

Subject to all terms, conditions, limitations, exclusions and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover:

1.    direct physical loss or damage by a peril insured against to alterations, extensions, renovations, erections, installations, assembly, additions and new facilities, including building materials, supplies, machinery or equipment incidental to such construction or occupancy while at an INSURED LOCATION described under the PROPERTY SECTION, while in the course of construction.

2.    the ACTUAL LOSS SUSTAINED by the Insured resulting from the necessary interruption of business during the PERIOD OF INDEMNITY which results directly from the DELAY IN COMPLETION provided that the DELAY IN COMPLETION is caused solely by physical loss or damage to or destruction of Property Insured described in Item No. 1 above.

3.    direct physical loss or damage to Property Insured described in Item No. 1  by a peril insured  against while such property is undergoing Hot Testing during the HOT TESTING PERIOD.

All coverage afforded under this Endorsement shall cease upon the earlier of:  (a) termination of the POLICY, or (b) termination of the HOT TESTING PERIOD as defined herein.

**B.    LIMIT OF LIABILITY:**

The COMPANY's total liability in any one OCCURRENCE under this Endorsement, shall in no event exceed **$The Sublimit specified in the Declarations**.

**C.    ADDITIONAL EXCLUSIONS:**

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

This Endorsement does not insure:

(1)    Contractor's or subcontractor's equipment; machinery, tools, equipment and property of a similar nature not destined to become a permanent part of the completed project or structure;

(2)    Loss of use, loss of markets, penalties for noncompletion, noncompliance with contract conditions, consequential loss of any kind;

(3)    Loss caused by frost, falling of ice or freezing, unless resulting from damage caused by fire, lighting, explosion, windstorm, hail, riot, riot attending a strike, civil commotion,

**PR 018 (02/12)**                                                    **Page 1 of 4**

aircraft, vehicles and smoke;

(4) a) Any manufacturer or supplier of machinery, equipment or other property for the cost of making good any loss or damage which such party has agreed to make good under a guarantee or warranty, whether expressed or implied, or

b) Any consulting engineer, architect or designer for loss or damage which arises out of the performance of their respective professional activities,

whether or not named as an Insured under this POLICY;

(5) Loss or damage directly or indirectly caused by fault, defect error or omission in design, plan or specification;

(6) Loss or damage occasioned directly or indirectly by any ordinance of law, any order of governmental or municipal authority; by suspension, lapse termination or cancellation of any license, lease or permit, and any injunction or process of any court;

(7) Loss resulting from the failure of the Insured to use due diligence and dispatch and all reasonable     means to restore the property Insured to the condition existing prior to loss or damage;

(8) Loss resulting from any DELAY IN COMPLETION or use which may be occasioned by ordinance, law or regulation, rule or ruling regulating or restricting repair, alteration, use, operation, construction or installation of buildings, structures or equipment, nor by suspension, lapse or cancellation of any lease or license, contract or order, nor for the DELAY IN COMPLETION or use due to interference by strikers or other persons with the transportation of property, the construction of buildings or with the occupancy and use of the premises;

(9) Consequential damages including liquidated damages, performance or non-performance penalties, and penalties for non-completion or non-compliance with contract conditions;

(10) Interruption of incoming electricity, fuel, water, gas, steam, refrigerant, or any other services needed for construction or operation;

(11) SOFT COSTS as defined herein;

(13) HOT TESTING of prototype or developmental machinery and equipment or of used machinery and equipment.

**D.     AS RESPECTS TESTING:**

No coverage shall be provided under this Endorsement unless all specified protective material and instrumentation is installed and activated.

In no event shall coverage be provided if supervisory or safety systems have been deliberately circumvented.

**E.     SUBROGATION:**

For the purpose of this Endorsement only, the following applies:

(A)     In the event of any payment made hereunder, the COMPANY shall be subrogated to all the Insured's rights of recovery therefore against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

(B)     Unless otherwise endorsed, it is a condition of this Endorsement that the COMPANY shall be subrogated, to the extent of payment, to all the Insured's rights of recovery against any subcontractor, architect, or design engineer, whether a named Insured or not, for any loss or damage for which the aforesaid subcontractor, architect, or design engineer would otherwise be legally liable.

## F.   DEFINITIONS:

The following terms whenever used in this Endorsement shall mean:

1.     "DELAY IN COMPLETION": the time period between the ANTICIPATED COMPLETION OF THE PROJECT and the ACTUAL COMPLETION OF THE PROJECT less any time resulting from delay caused by loss or damage for which the COMPANY is not liable under this Endorsement and not more than the PERIOD OF INDEMNITY.

2.     "ANTICIPATED COMPLETION OF THE PROJECT": that point in time when COMPLETION OF THE PROJECT would have taken place but for the loss or damage for which the COMPANY is liable under this Endorsement.

3.     "ACTUAL COMPLETION OF THE PROJECT": that point in time when the COMPLETION OF THE PROJECT actually takes place.

4.     "HOT TESTING PERIOD: that period of time beginning with the earlier of:

    (a) introduction into a system of feedstock or other materials for processing or handling, or
    (b) commencement of fuel or energy supply to a system

and ending with the earliest of:

    (a) the Project being taken over or taken into use by the principal of the Project, or
    (b) Cancellation or Expiration of the POLICY.

5.     "PERIOD OF INDEMNITY": The twelve (12) month period of time commencing with the ANTICIPATED COMPLETION OF THE PROJECT.

6.     "SOFT COSTS": Expenditures which are necessarily incurred during the PERIOD OF INDEMNITY that would not have been incurred by the Insured if the DELAY had not occurred including:

    a.    Interest Expense on construction loan(s)

    b.    Advertising and promotional expenses necessarily incurred;

    c.    Architects and/or engineers fees;

    d.    Legal and accounting fees;

    e.    Commissions incurred upon renegotiation of leases;

    f.    Fees for licensing and permits;

    g.    Insurance premium;

      h.   Real Estate taxes and assessments;
      i.    Project administration  expense;


This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of liability provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ___8___ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# DATA DISTORTION/CORRUPTION ENDORSEMENT
# COVERS SUBSEQUENT DAMAGE
# FROM NAMED PERILS AND B&M

It is hereby understood and agreed that this POLICY is amended as follows:

The COMPANY will not pay for damage or consequential loss directly or indirectly caused by, consisting of, or arising from:

(A) Any functioning or malfunctioning of the Internet or similar facility, or of any intranet or private network or similar facility,

(B) Any corruption, destruction, distortion, erasure or other loss or damage to data, software or any kind of programming or instruction set,

(C) Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or COMPUTER system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business.

This endorsement shall not exclude subsequent damage or consequential loss, not otherwise excluded, which itself results from fire, lightning, explosion, falling aircraft, smoke, vehicle impact, WIND, or ACCIDENT.

This Endorsement shall not act to increase or broaden coverage afforded by this POLICY.

Such damage or consequential loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

In consequence of all the foregoing the Annual Premium remains unaltered.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

**PR 020 (02/12)**            **Page 1 of 1**

Endorsement No. ___9___    Additional Premium _____    Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# ELECTRONIC DATA PROCESSING ENDORSEMENT

**A.** **COVERAGE**

Subject to all terms, conditions, limitations, exclusions and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover direct physical loss or damage by a peril insured against to ELECTRONIC DATA PROCESSING SYSTEMS and MEDIA including:

1. Direct physical loss or damage to covered equipment and media caused by mechanical breakdown or malfunction of DATA PROCESSING EQUIPMENT.

2. Direct physical loss or damage to covered DATA PROCESSING EQUIPMENT (including wiring) and DATA PROCESSING MEDIA caused by short circuit, blowout, electrical or magnetic injury or disturbance, or other electrical damage.

3. Direct physical loss or damage to covered DATA PROCESSING EQUIPMENT or DATA PROCESSING MEDIA from corrosion, rust or changes in humidity or temperature as a result of an insured peril loss to dedicated environmental control equipment.

**B.** **ADDITIONAL COVERAGE**:

This POLICY is extended to cover the cost to refill a:

1. Clean Agent Fire Extinguishing System, other than halon;

2. Carbon Dioxide ($CO_2$) Fire Extinguishing System

which protects data processing operations when they discharge as intended to control a loss covered by this Endorsement. The Insured agrees to keep the Clean Agent Fire Extinguishing System and/or Carbon Dioxide ($CO_2$) Fire Extinguishing System, in good working order while this Endorsement is in effect. This extension does not cover any loss that happens at the time of installation, repair or recharging of the special agent extinguishing system.

**C.** **LIMIT OF LIABILITY**

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed **$The Sublimit specified in the Declarations**.

**D.** **VALUATION**:

In the event of loss or damage, the basis of adjustment of the property insured herein shall be as follows:

1. DATA PROCESSING SYSTEMS - the actual retail replacement cost of the property at the time any loss or damage occurs. Loss or damage shall be ascertained or estimated on the basis of the actual cash retail REPLACEMENT COST of property similar in kind to that insured at the place of and immediately preceding the time of such loss or damage.

**PR 023 (02/12)**                                                                                    **Page 1 of 2**

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 75 of 126

2.  DATA PROCESSING MEDIA - the actual reproduction cost of the property; if not replaced or reproduced, blank value of such property.  Actual reproduction cost shall mean the cost of reproducing the data thereon from duplicates or from originals of the previous generation, but no liability is assumed hereunder for the cost of gathering or assembling information or data for such reproduction.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

**PR 023 (02/12)**                                                                                                           **Page 2 of 2**

Endorsement No. ___10___   Additional Premium _____   Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# ELECTRONIC DATE RECOGNITION CLAUSE ENDORSEMENT
## (COMBINED)

It is hereby understood and agreed that this POLICY is amended as follows:

A. This COMPANY will not pay for damage or consequential loss directly or indirectly caused by, consisting of, or arising from, the failure of any COMPUTER, DATA PROCESSING EQUIPMENT or media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the insured or not, that results from the inability to:

    1. Correctly recognize any date as its true calendar date;

    2. Capture, save, or retain and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date otherwise than as its true calendar date; and/or

    3. Capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of date or the inability to capture, save, retain or correctly process such data on or after any date.

B. It is further understood that this COMPANY will not pay for the repair or modification of any part of an ELECTRONIC DATA PROCESSING SYSTEM or its related equipment, to correct deficiencies or features of logic or operation.

C. It is further understood that this COMPANY will not pay for damage or consequential loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design evaluation, inspection installation, maintenance, repair or supervision done by you or for you or by or for others to determine, rectify or rest, any potential or actual failure, malfunction or inadequacy described in A. above.

Such damage or consequential loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This Endorsement shall not exclude subsequent damage or consequential loss, not otherwise excluded, which itself results from fire, lightning, explosion, falling aircraft, smoke, vehicle impact, WIND, ACCIDENT.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ____11____ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# EXTRA EXPENSE ENDORSEMENT

**A.  COVERAGE:**

Subject to all terms, conditions, exclusions, limitations, and stipulations of the POLICY to which this endorsement is attached, not in conflict herewith, this POLICY is extended to cover the reasonable and necessary EXTRA EXPENSE, incurred by the Insured in order to continue as nearly as practicable the NORMAL operation of the Insured's business following direct physical loss or damage of real or personal property at an INSURED LOCATION(S), by the peril(s) insured against during the Term of this POLICY.

**B.  LIMIT OF LIABILITY:**

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed **$The Sublimit specified in the Declarations**.

**C.  MEASURE OF RECOVERY:**

In the event of direct physical loss or damage to covered property by a peril insured against, this COMPANY shall be liable for such reasonable and necessary EXTRA EXPENSE incurred only during the "PERIOD OF INDEMNITY."

No claim shall be payable with respect to EXTRA EXPENSE unless and until a loss has been paid or liability admitted, in respect of direct physical damage to property insured under this POLICY giving rise to such EXTRA EXPENSE loss.  This Condition shall not apply if no such payment shall have been made nor liability admitted solely owing to the operation of a "Deductible" in this POLICY excluding liability for losses below a specified amount.

**D.  RESUMPTION OF OPERATIONS:**

It is a condition of this POLICY that as soon as practicable the Insured shall resume NORMAL operation of the business and shall discontinue incurring such EXTRA EXPENSE.

**E.  INTERRUPTION BY CIVIL OR MILITARY AUTHORITY:**

This POLICY is extended to include necessary EXTRA EXPENSE incurred by the Insured as covered hereunder, during the length of time, not exceeding **the number of days shown under TIME LIMITS specified in the Declarations** when, as a direct result of damage to or destruction of property within one (1) statute mile of the premises described under the property section by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil or military authority.

**F.  ADDITIONAL EXCLUSIONS AND LIMITATIONS:**

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

PR 028 (02/12)                                                                    Page 1 of 2

This COMPANY shall not be liable for any EXTRA EXPENSE resulting from:

1) Enforcement of any ordinance or law regulating the use, construction, repair or demolition of property; or

2) Interference at the described premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of business; or

3) The suspension, lapse or cancellation or any lease or license, contract or order beyond the PERIOD OF INDEMNITY.

4) Loss of income;

5) The cost of repairing or replacing any of the real or personal property herein described, or the cost of research or other expense necessary to replace or restore damaged or destroyed books of account, abstracts, drawings, card index systems or other records (including film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing), that have been damaged or destroyed by the perils(s) insured against, except cost in excess of the NORMAL cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing loss under this Policy.  In no event shall such excess cost exceed the amount by which the total EXTRA EXPENSE loss otherwise payable under this Policy is thereby reduced; or

6) Any other consequential or remote loss.

## G.  DEFINITIONS:

The term "EXTRA EXPENSE", wherever used in this POLICY, is defined as the excess, if any, of the total cost incurred during the PERIOD OF INDEMNITY chargeable to the operation of the Insured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no damage or destruction occurred.  Any salvage value of property obtained for temporary use during the PERIOD OF INDEMNITY, which remains after the resumption of NORMAL operations, shall be taken into consideration in the adjustment of any loss hereunder.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

PR 028 (02/12)                                                                    Page 2 of 2

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 79 of 126

Endorsement No. ____12_____ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# FIRE AND POLICE DEPARTMENT SERVICE CHARGES ENDORSEMENT

Subject to all terms, conditions, exclusions, limitations and stipulations of this POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover the reasonable and necessary:

1.  fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the insured property at an INSURED LOCATION.

2.  costs incurred of restoring and recharging fire protection systems following an insured loss at an INSURED LOCATION.

3.  cost incurred for the WATER used for fighting a fire in, on or exposing the insured property at an INSURED LOCATION.

4.  police department service charges imposed as a result of responding to an insured loss at an INSURED LOCATION.

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed $**The Sublimit specified in the Declarations.**

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

**PR 029 (02/12)**                                                    **Page 1 of 1**

Endorsement No. ____13____ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# FINE ARTS ENDORSEMENT

**A.    INTEREST AND PROPERTY INSURED:**

Subject to all terms, conditions and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover direct physical loss or damage by a peril insured against to FINE ARTS as defined herein; all while at an INSURED LOCATION.

**B.    LIMIT OF LIABILITY:**

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed **$The Sublimit specified in the Declarations**.

**C.    NEWLY ACQUIRED PROPERTY:**

This POLICY is extended to cover FINE ARTS newly acquired by the Insured during the term of this POLICY while such property is in the actual possession of the Insured and only while located within the territorial limits of this POLICY.

Coverage under this newly acquired property provision shall commence when the Insured first acquires actual possession of such FINE ARTS and shall cease Sixty (60) days from the date of such acquisition, or when reported to and accepted by the COMPANY, or on the expiration date of this POLICY, whichever shall occur first.

Liability for loss under this newly acquired property provision for any one FINE ARTS property shall not exceed $**5,000** per each FINE ARTS property.

This newly acquired property provision shall not increase any amounts or limits of liability provided by this POLICY.

**D.    ADDITIONAL EXCLUSIONS:**

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

THIS ENDORSEMENT DOES NOT INSURE:

1.    FINE ARTS property while in transit or while on the premises of any exhibition, exposition, fair or trade show;

2.    Against loss or damage caused by any repairing, restoration, or retouching process performed on any FINE ARTS;

3.    Against loss or damage caused by breakage of statuary, art glass windows, glassware, bric-a-brac, marble, porcelain and similar fragile property unless such breakage is caused by fire, lightning, WIND, removal, leakage from fire protective equipment, explosion, aircraft, vehicles, smoke,  riot, civil commotion or vandalism.

Includes copyrighted material of ISO Properties, Inc., used with its permission.

Case 1:21-cv-05041 Document 1-1 Filed 06/08/21 Page 81 of 126

**E.      PACKING AND UNPACKING:**

The Insured agrees that when packing or unpacking of FINE ARTS is undertaken, such packing and unpacking will be performed by competent packers.

**F.      VALUATION:**

The value of all FINE ARTS, including newly acquired property, will be the least of the following at the time of loss:

1.       The reasonable and necessary cost to repair or restore such property to the physical condition that existed on the date of the loss,

2.       The cost to replace the article,

3.       The value, if any, stated on a schedule on file with the COMPANY,

4.       The applicable limit stated in this endorsement.

In the event that a FINE ARTS article is part of a pair or set, and the physically damaged article cannot be replaced, or repaired or restored to the condition that existed immediately prior to the loss, the COMPANY will be liable for the lesser of the full value of such pair or set or the amount designated on the schedule.  The Insured agrees to surrender the pair or set to the COMPANY.

**G.      FINE ARTS**

The term "FINE ARTS" wherever used in this POLICY is defined as paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, antique furniture, antique jewelry, bric-a-brac, porcelains, and similar property of rarity, historical value, or artistic merit, but excluding automobiles, coins, stamps, furs, jewelry other than antique, precious stones, precious metals, watercraft, aircraft, money or securities.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Includes copyrighted material of ISO Properties, Inc., used with its permission.

Endorsement No. _____14_____ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# INCREASED COST OF CONSTRUCTION & DEMOLITION ENDORSEMENT

**A.     COVERAGE:**

Subject to all terms, conditions, exclusions, limitations and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, it is hereby understood and agreed that with respect to the Property Section of this POLICY only, this POLICY is extended to cover:

1.     The increased cost of repair, rebuilding or construction of the building(s) or structures(s) covered under this POLICY, on the same premises, of like size and occupancy, caused by loss from any peril insured against under this POLICY and resulting from the enforcement of, and limited to the minimum requirements of, any law or ordinance regulating the construction or repair of damaged building(s) or structure(s); and

2.     The insured value of the undamaged portion, and the cost of demolishing any such undamaged portion of the building(s) or structure(s) covered under this POLICY, including the cost of clearing the site thereof, caused by loss from any peril insured against under this POLICY and resulting from enforcement of any law or ordinance regulating the construction or repair of building(s) or structure(s) and in force at the time of loss which necessitate such demolition;

**B.     LIMIT OF LIABILITY:**

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed **$The Sublimit  specified in the Declarations.**

**C.     ADDITIONAL EXCLUSIONS:**

In addition to the exclusions elsewhere in the POLICY, the following exclusions apply to this Endorsement:

This COMPANY shall not be liable under this Endorsement for:

1.     Any additional costs, resulting from the insured's obligation to comply with regulations mandated by any federal, state, municipal, or other authority, that existed prior to the loss from peril(s) insured hereunder.

2.     Any loss unless and until the damaged or destroyed building(s) or structure(s) is actually rebuilt or replaced on the same premises with due diligence and dispatch, and, in no event, unless repair or replacement is completed within Two (2) years after the destruction or damage, or within such further time as the COMPANY may allow, in writing, during the Two (2) years.

3.     More than the amount actually and necessarily expended to repair or replace as above provided, in excess of the amount recoverable under this POLICY had this endorsement not been attached thereto.

4.     More than the amount insured under this endorsement in excess of the REPLACEMENT COST of the building(s) or structure(s) without deduction for depreciation however caused.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. _____15_____ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# INGRESS/EGRESS ENDORSEMENT

Subject to all terms, conditions, exclusions, limitations and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover the ACTUAL LOSS SUSTAINED during the period of time, starting at the time of physical damage, **not exceeding the number of days shown under TIME LIMITS specified in the Declarations,** when as a direct result of loss or damage by a peril insured against to property of a type insured against within one (1) mile of an INSURED LOCATION, ingress to or egress from the premises insured is impaired irrespective of whether the premises or property insured shall have been damaged.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Case 1:21-cv-05041 Document 1-1 Filed 06/08/21 Page 84 of 126

Endorsement No. ___16___  Additional Premium _____  Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# LEASEHOLD INTEREST ENDORSEMENT

**A.  COVERAGE**

Subject to all terms, conditions, exclusions, limitations and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover the following, if caused by direct physical loss or damage by a peril insured against to real property of the type covered by this POLICY, located at LOCATIONS listed in Part B below:

1.  the actual rent which remains payable for the unexpired term of the lease if such property becomes wholly untenantable or unusable and the lease agreement requires continuation of the rent payment; or

2.  the proportion of rent which remains payable for the unexpired term of the lease if such property becomes partially untenantable or unusable and the lease agreement requires continuation of the rent payment; or

3.  the LEASEHOLD INTEREST for the first three (3) MONTHS following loss or damage and the Net LEASEHOLD INTEREST for the remaining unexpired term of the lease if the lease is canceled by the lessor pursuant to the lease agreement or by the operation of law.

**B.  COVERED LOCATIONS AND LIMIT OF LIABILITY**

Coverage provided by this Endorsement only applies to the LOCATION(S) listed below, and the COMPANY's total liability for loss under this Endorsement arising out of any one OCCURRENCE shall in no event  exceed the amount shown opposite each LOCATION.

| LOCATION NUMBER | LOCATION | LIMIT OF LIABILITY |
|---|---|---|
| | | **$The Sublimit specified in the Declarations.** |

**C.  ADDITIONAL CONDITION**

It is a condition of this Endorsement that the Insured shall use any suitable property or service owned or controlled by the Insured or obtainable from another source to reduce the amount of loss hereunder.

**D. ADDITIONAL EXCLUSIONS**

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

This Endorsement does not insure against any loss or expense resulting from:

1. the suspension, lapse or cancellation of any license; or

2. the Insured exercising an option to cancel the lease; or

3. any act or omission of or by the Insured which constitutes a default under the lease.

**E. DEFINITIONS**

The following terms wherever used in this Endorsement shall mean:

1. "LEASEHOLD INTEREST": The excess rent paid for either the same or similar replacement property over the amount of rent and other charges which would have been payable under the unexpired lease plus bonuses or advance rent paid, including any maintenance, operating charges or taxes, for each MONTH during the unexpired term of the Insured's lease.

2. "NET LEASEHOLD INTEREST": The present value of the amount which placed at eight percent (8%) annual interest would equal the LEASEHOLD INTEREST, less any amounts otherwise payable hereunder.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

**PR 037 (02/12)**

**Page 2 of 2**

Endorsement No. ____17_____ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# MINIMUM EARNED PREMIUM ENDORSEMENT

In the event of cancellation of this policy by the Insured, a minimum earned premium of <u>30%</u> of the original policy premium shall become earned; subject to the cancellation provisions of the policy.

Failure of the Insured to make timely payment of premium shall be a request by the Insured for the Company to cancel.  In the event of such cancellation by the Company for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if the insured remits full premium due within 10 days of receiving it.

In the event of any other cancellation by the Company, the earned premium shall be computed pro rata, not subject to the minimum premium.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

**Page 1 of 1**

Endorsement No. ___18___ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# MOBILE EQUIPMENT ENDORSEMENT

The coverage provided by this POLICY to which this Endorsement is attached is restricted as respects direct physical loss or damage to Mobile Equipment of the Insured, or Mobile Equipment of others in the care, custody and control of the Insured and for which the Insured is legally liable, all while situated at an INSURED LOCATION and described in the MOBILE EQUIPMENT SCHEDULE set forth herein.

Boom(s) in excess of Twenty-Five (25) feet in length are insured hereunder only against loss or damage directly caused by fire, lightning, WIND, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, smoke, landslide or overturning of the unit of which it is a part; collision, derailment or overturn of carrying conveyance on which the unit insured hereunder is being transported; collision with other Mobile Equipment, whether or not such other equipment is insured hereunder.

**A.     LIMIT OF LIABILITY:**

This COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed the Scheduled value of each item set forth below, subject to **$The Sublimit specified in the Declarations** for all items combined, either in case of partial or total loss, or salvage charges, or expenses, or all combined.  Any subsequent increase in the Schedule of Values and/or Mobile Equipment Schedule shall not be deemed to increase the liability limit stated in this clause unless amended specifically by Endorsement.

**B.     MOBILE EQUIPMENT SCHEDULE**

| Location | Item # | Item Description | Limit of Liability | Loss Payee |
|---|---|---|---|---|
|  |  |  |  |  |
| As per Schedule submitted and accepted by the COMPANY as of the POLICY inception date specified in the Declarations. |  | As per Schedule submitted and accepted by the COMPANY as of the POLICY inception date set as specified in the Declarations. | $The Sublimit specified in the Declarations |  |

## C.     ADDITIONAL EXCLUSIONS:

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

THIS ENDORSEMENT DOES NOT INSURE:

1.     Property while loaned, leased or rented to others;

2.     Plans, blueprints, designs, specifications or any similar property;

3.     Automobiles, motor trucks, tractors, trailers, motorcycles, or similar conveyances licensed for use on public highways;

4.     Aircraft or watercraft;

5.     Property while underground, underwater, waterborne (except while being transported on a regular ferry line), or airborne;

6.     Property which has become a part of any structure;

7.     Against loss, damage or expense occasioned by the weight of a load exceeding the rated or registered lifting or supporting capacity of any machine;

8.     Against loss, damage or expense to dynamos, exciters, lamps, switches, motors or other electrical appliances or devices, including wiring, caused by electrical injury or disturbance from artificial causes unless fire or explosion ensues and then only for the actual loss or damage directly caused by such ensuing fire or explosion;

9.     Against loss, damage, or expense occasioned by any repairing, adjusting, servicing, remodeling or maintenance operation unless fire or explosion ensues and then only for the actual loss or damage directly caused by such ensuing fire or explosion;

10.    Against loss, damage or expense to tires or tubes unless the loss or damage is caused by fire, windstorm or theft or is coincident with other loss or damage insured by this POLICY;

11.    Against loss, damage or expense occasioned by breaking through ice, or subsidence of ice or sinking in muskeg;

12.    Against loss, damage or expense occasioned by or resulting from misappropriation, secretion, conversion, infidelity or any dishonest act on the part of the Insured or any other party of interest, his or their employees or agents or any person or persons to whom the property may be entrusted, other than carriers for hire;

13.    Against unexplained loss, mysterious disappearance, nor loss or shortage disclosed upon taking inventory;

14.    Against loss, damage or expense occasioned by obsolescence;

15.    Against loss, damage or expense caused by or resulting from wear and tear, mechanical or electrical breakdown or failure, inherent vice, latent defect, gradual deterioration, corrosion, pitting, rust, dampness of atmosphere, freezing or extremes of temperature;

16. Against loss, damage or expense occasioned by overheating or explosion originating within steam boilers, steam piping, pressure vessels or internal combustion engines;

17. Against loss, damage or expense occasioned by rotating parts of machinery caused by centrifugal force;

18. Against loss, damage or expense occasioned by any loss which is unexplained;

19. Against loss resulting from interruption of business, delay, loss of market or use, or direct or consequential loss of any kind;

20. The cost and expense of repairing any defective part.

21. An OCCURRENCE on public roads or waterways

**D.    VALUATION:**

This COMPANY shall not be liable beyond the ACTUAL CASH VALUE of the Mobile Equipment at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such ACTUAL CASH VALUE, however caused, subject to a maximum of the scheduled value of the item, as scheduled herein, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

**E.    TERRITORY:**

This Endorsement insures only while the Mobile Equipment is at locations within the United States of America including the District of Columbia.

**F.    NEW ACQUISITIONS:**

This Endorsement is extended to cover additional items of a nature similar to those scheduled herein and such items have been acquired subsequent to the attachment date and during the term of this POLICY provided the Insured reports such additions within <u>Thirty</u> (30) days from the date acquired and pays full premium thereon from the date acquired at pro rata of the POLICY rate.  It is specifically understood and agreed, however, that this Endorsement shall cease to cover such additional items if they are not reported to the COMPANY within the said <u>Thirty</u> (30) day period and that in any event this COMPANY shall not be liable under the provisions of this clause for more than the ACTUAL CASH VALUE of such property.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ____19____ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# NAMED WINDSTORM DEFINITION

"NAMED WINDSTORM" shall mean a storm or weather condition that:

has been declared by the National Oceanic and Atmospheric Administration (NOAA), or its global equivalent, or the World Meteorological Organization or Regional Specialized Meteorological Center (RSMC), or Tropical Cyclone Warning Center (TCWC), or any governmental agency or body having the authority to make such declarations, or any other recognized meteorological authority, to be a hurricane, typhoon, tropical storm or cyclone. NAMED WINDSTORM includes all WIND and rain that ensues from a NAMED WINDSTORM.

In respect of losses hereunder arising from NAMED WINDSTORM, the term OCCURRENCE shall mean the sum total of all the Insured's losses sustained during any one period of seventy-two (72) consecutive hours commencing within the Term of this POLICY under the foregoing perils arising out of or caused by the same atmospheric disturbance.

As respects the foregoing, the Insured may elect the moment from which any period of seventy-two (72) consecutive hours shall be deemed to have commenced, this COMPANY being responsible only for its proportion of the loss to the Insured in respect to the said elected period of seventy-two (72) hours. No single elected seventy-two (72) hour period shall overlap any other elected seventy-two (72) hour period.

This COMPANY shall not be liable for any loss occurring before the effective date and time of this POLICY, nor for any loss occurring after the expiration date and time of this POLICY. The expiration of the POLICY shall not reduce the seventy-two (72) hour period.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

PR 042 (11/16)                                                    Page 1 of 1

Includes copyrighted material of ISO Properties, Inc., used with its permission.

Case 1:21-cv-05041  Document 1-1  Filed 06/08/21  Page 91 of 126

Endorsement No. ___20___ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

## NEWLY ACQUIRED LOCATIONS ENDORSEMENT

Subject to all terms, conditions, exclusions, limitations, and stipulations of this POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is automatically extended to cover any newly acquired property at LOCATIONS not already covered under this POLICY for a period of **the number of days shown under TIME LIMITS specified in the Declarations** from the date the property is acquired by the Insured subject to the following limit of liability:

The COMPANY's total liability under this Endorsement in any one OCCURRENCE shall in no event exceed **$The Sublimit specified in the Declarations** at any one LOCATION.

At the termination of the period shown in the first paragraph above, permanent coverage may be provided subject to notification to and acceptance by the COMPANY at terms to be agreed upon at the time of acceptance.

This Endorsement shall not be construed as providing coverage at INSURED LOCATIONS or LOCATIONS otherwise insured herein.

**ADDITIONAL EXCLUSIONS**:

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

THIS ENDORSEMENT DOES NOT INSURE AGAINST:

1.      loss or damage caused by or resulting from FLOOD and/or EARTH MOVEMENT;

2.      property while in transit or waterborne;

3.      property while on the premises of any exhibition, exposition, fair or trade show;

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

**PR 043 (11/16)**                                                         **Page 1 of 1**

Includes copyrighted material of ISO Properties, Inc., used with its permission.

Endorsement No. ____21_____ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

A.  It is agreed that the following special terms and conditions apply to, and are made a part of, the POLICY to which this Endorsement is attached:

    1.  The Limit of Liability or Amount of Insurance shown in the Declarations of this POLICY, or endorsed onto this POLICY, is the total limit of the COMPANY'S liability applicable to each OCCURRENCE as hereafter defined.  Notwithstanding any other terms and conditions of this POLICY to the contrary, in no event shall the liability of the COMPANY exceed this limit or amount irrespective of the number of LOCATIONS involved.

    2.  The premium for this POLICY is based upon the Schedule of Values on file with the COMPANY, or attached to this POLICY.  In the event of loss hereunder, liability of the COMPANY shall be limited to the least of the following:

        a.  The actual amount of loss, less applicable deductible (s);

        b.  Omit upon receipt of signed SOV & BI Worksheet.

        c.  The limit of liability or Amount of Insurance specified in the Declarations of this POLICY, or endorsed onto this POLICY.

B.  DEFINITIONS

    The following definition supersedes the definition of OCCURRENCE contained in the Policy:

    1.  "OCCURRENCE"

    The term "OCCURRENCE" shall mean any one loss, or series of losses arising out of one event. When loss or losses result from the perils of WIND, FLOOD, EARTH MOVEMENT, riot, riot attending a strike, civil commotion and vandalism and malicious mischief, if such perils are covered by this Policy, one event shall be construed to be all losses arising during a continuous period of seventy-two (72) hours.  When filing proof of loss, the Insured may elect the moment at which seventy-two (72) hour period shall be deemed to have commenced, which shall not be earlier than when the first loss to the covered property of interests occurs.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the Policy, except as herein above set forth.

Case 1:21-cv-05041  Document 1-1  Filed 06/08/21  Page 93 of 126

Endorsement No. ___22_____ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# OFF-PREMISES POWER ENDORSEMENT
# PROPERTY DAMAGE & BUSINESS INTERRUPTION COVERAGE

## A. COVERAGE

Subject to all terms, conditions, exclusions, limitations, and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith:

1. This POLICY is extended to insure against  direct physical loss or damage to property insured hereunder by a peril insured against; and

2. This POLICY is extended to insure against loss resulting from necessary interruption of business conducted by the Insured;

both resulting from direct physical loss or damage to Off-Premises utility and power stations, substations, transformer or switching or pumping stations, including Off-Premises poles, towers, and transmission or distribution lines, furnishing electricity, steam, WATER, gas or refrigeration to an INSURED LOCATION caused by the peril(s) insured against during the Term of this POLICY.

## B. WAITING PERIOD

With respect to this extension of coverage, the duration of such interruption at an INSURED LOCATION due to loss or damage to or destruction of the above described Off-Premises property must exceed the **WAITING PERIOD specified in the Declarations**.  When such interruption exceeds this **WAITING PERIOD specified in the Declarations**, any claim for loss, damage or expense arising out of any one OCCURRENCE shall be subject to the Deductible specified in the Declarations.

## C. LIMIT OF LIABILITY

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed **$The Sublimit specified in the Declarations**.

## D. CONDITIONS

This Endorsement applies only to such Off-Premises property as described above located within five (5) miles of an INSURED LOCATION.

This Endorsement does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 94 of 126

Endorsement No. ___23___ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# POLLUTION AND CONTAMINATION CLEAN-UP ENDORSEMENT

Subject to all terms, conditions, limitations, exclusions and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, it is hereby understood and agreed that this POLICY is extended to cover the reasonable and necessary expenses actually incurred by the Insured to cleanup and remove debris defined as a POLLUTANT or CONTAMINANT and other POLLUTANTS or CONTAMINANTS from LAND or WATER at an INSURED LOCATION if the release, discharge, dispersal, migration, or seepage of these substances results from direct physical loss or damage occurring during the term of this POLICY caused by any of the perils specified in the "Pollution and Contamination Exclusion Clause"

No liability shall exist for pollution cleanup and removal at any LOCATION insured for personal property only, at any property covered under the Newly Acquired Locations, Unnamed Locations or Errors and Omissions coverage and unless such expenses are reported to the COMPANY within one hundred eighty (180) days of the date of direct physical loss or damage or the expiration of this policy, whichever is earlier.

The COMPANY's total liability in any one OCCURRENCE and in the annual aggregate shall in no event exceed **$The Sublimit specified in the Declarations**.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this Policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the Policy, except as herein above set forth.

Case 1:21-cv-05041 Document 1-1 Filed 06/08/21 Page 95 of 126

Endorsement No. ___24___ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - PHYSICAL DAMAGE – DIRECT

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

*Note - If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59

NMA 1191

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ___25___   Additional Premium _____   Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# RENTAL VALUE INSURANCE ENDORSEMENT

**A.      COVERAGE:**

Subject to all terms, conditions, exclusions, limitations and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover against loss resulting directly from necessary untenantability, caused by direct physical loss or damage to the building(s) or structure(s) as furnished and equipped by the Insured, by the peril(s) insured against during the term of this POLICY, on the premises situated as herein described.

**B.      LIMIT OF LIABILITY:**

This COMPANY shall not be liable hereunder for an amount to exceed **$The Sublimit specified in the Declarations** per OCCURRENCE.

**C.      MEASURE OF RECOVERY:**

In the event of direct physical loss or damage this COMPANY shall be liable for the ACTUAL LOSS SUSTAINED by the Insured resulting directly from necessary untenantability, caused by damage to or destruction of the building(s) or structure(s) as furnished and equipped by the Insured, on the described premises by the peril(s) insured against during the Term of Insurance, but not exceeding the reduction in RENTAL VALUE less charges and expenses which do not necessarily continue during the period of untenantability, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this Policy.

No claim shall be payable with respect to RENTAL VALUE unless and until a loss has been paid or liability admitted, in respect of direct physical damage to property insured under this POLICY giving rise to such RENTAL VALUE loss.  This condition shall not apply if no such payment shall have been made nor liability admitted solely owing to the operation of a "Deductible" in this POLICY excluding liability for losses below a specified amount.

**D.      COINSURANCE:**

This COMPANY shall be liable, in the event of loss, for no greater proportion thereof than the amount hereby covered bears to **the percentage specified in the Declarations** of the RENTAL VALUE that would have been earned (had no loss occurred) during the Twelve (12) MONTHS immediately following the date of damage to or destruction of the described property.

**E.      EXPENSES RELATED TO REDUCING LOSS:**

This POLICY also covers such expenses as are necessarily incurred for the purpose of reducing loss under this Endorsement (except expenses incurred to extinguish a fire), but in no event shall the amount payable under this coverage exceed the amount by which the loss otherwise payable under this POLICY is thereby reduced.  Such expenses shall not be subject to the application of the Coinsurance Clause.

**F.      INTERRUPTION BY CIVIL OR MILITARY AUTHORITY:**

This POLICY is extended to include the ACTUAL LOSS SUSTAINED by the Insured, resulting directly from untenantability as covered hereunder, during the length of time, not exceeding **the number of days shown under TIME LIMITS specified in the Declarations** when, as a direct result of damage to or destruction of property within one (1) statute mile of an INSURED LOCATION by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil or military authority.

**G.      ADDITIONAL EXCLUSIONS:**

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

**THIS COMPANY SHALL NOT BE LIABLE FOR ANY INCREASE OF LOSS RESULTING FROM**:

1.      Enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures; or

2.      Interference at the described premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the reoccupancy of the premises; or

3.      The suspension, lapse or cancellation of any lease, license, contract or order unless such suspension, lapse or cancellation results directly from the untenantability of the premises, and then this COMPANY shall be liable for only such loss as affects the RENTAL VALUE of the premises during, and limited to, the PERIOD OF INDEMNITY covered under this Policy;

nor shall this COMPANY be liable for any other consequential or remote loss.

**H.      RENTAL VALUE:**

**FOR THE PURPOSES OF THIS ENDORSEMENT "RENTAL VALUE" IS DEFINED AS THE SUM OF:**

1.      The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured, and;

2.      The amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and;

3.      The fair RENTAL VALUE of any portion of said property which is occupied by the Insured.

In determining RENTAL VALUE due consideration shall be given to the rental experience before the date of damage or destruction and the probable experience thereafter had no loss occurred.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ___26___   Additional Premium _____   Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# REPLACEMENT COST ENDORSEMENT

## (Applicable To Real and Personal Property Except Stock and Vacant Buildings)

1.  The following Coinsurance Clause is made a part of this POLICY to apply only to the item(s) to which this Endorsement applies, which Coinsurance Clause supersedes and replaces the Coinsurance Clause, if any, otherwise applicable to such item(s), the provisions of this POLICY applicable only to such item(s) are amended to substitute the term "REPLACEMENT COST" (without deduction for depreciation, deterioration or obsolescence) for the term "ACTUAL CASH VALUE" wherever it appears in this POLICY, subject, however, in all other respects to the provisions of this endorsement and of the POLICY to which this Endorsement is attached.

2.  This Endorsement shall not apply to stock and vacant buildings (RAW, IN PROCESS or FINISHED) or MERCHANDISE, including materials and supplies in connection therewith, property of others, household furniture or residential contents, or to manuscripts; or to paintings, etchings, pictures, tapestries, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelains, rare glassware and bric-a-brac, or other articles of art, rarity or antiquity; or to any refractory lining or catalyst.

3.  The COMPANY shall not be liable under this Endorsement for any loss:

    a.  occasioned directly or indirectly by enforcement of any ordinance or law regulating the use, construction, repair or demolition of any structure(s) unless such liability has been specifically assumed under this POLICY;

    b.  unless and until the damaged or destroyed property is actually repaired or replaced by the Insured with due diligence and dispatch, and in no event, unless repair or replacement is completed within two (2) years after the destruction or damage, or within such further time as the Company may during the two (2) years, in writing, allow.

4.  COINSURANCE CLAUSE:   It is expressly stipulated and made a condition of this POLICY that the Insured shall at all times maintain contributing insurance on each item of property, the REPLACEMENT COST of which is covered by this POLICY, to the extent of at least the Coinsurance percentage specified on the Declarations of the REPLACEMENT COST (without deduction for depreciation, deterioration or obsolescence) of such property at the time of the loss, and that failing to do so, the Insured shall to the extent of such deficit bear his, her or their proportion of any loss.

    In the event that the aggregate claim for any loss is both less than $10,000 and less than 2% of the total amount of insurance applicable to the property involved at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required, providing, that nothing herein shall be construed to waive application of the first paragraph of this clause.

5.  The Insured may elect to make claim under this POLICY in accordance with its provisions, disregarding this Endorsement, except that the foregoing Coinsurance Clause applicable to the REPLACEMENT COST of said property shall apply; and the Insured may make further claim for any additional liability brought about by this Endorsement in accordance with its provisions, provided this COMPANY is notified in writing within one hundred and eighty (180) days after loss of the Insured's intent to make such further claim.

6.  The COMPANY's liability for loss on a REPLACEMENT COST basis shall not exceed the lesser of the following amounts:

    a.  the amount of the POLICY applicable to the damaged or destroyed property;

    b.  the REPLACEMENT COST of the property or any part thereof with identical property or with like, kind and quality of such property on the same premises and intended for the same occupancy and use; or

    c.  the amount actually and necessarily expended in repairing or replacing said property or any part thereof.

7.  APPORTIONMENT CLAUSE:  The COMPANY shall not be liable under this POLICY including this Endorsement for a greater proportion of any loss than the amount of this POLICY applying to the property to which this Endorsement applies bears to the total amount of insurance on such property against the peril involved, whether or not such other insurance includes the extension of coverage provided under this endorsement, and whether such other insurance is collectible or not.

8.  If the coverage on property under this POLICY be divided into two or more items, all of the foregoing shall apply separately to each item to which this Endorsement applies.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 100 of 126

Endorsement No. _____27_____Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# ROOF LIMITATION ENDORSEMENT

The coverage provided by this POLICY to which this Endorsement is attached is limited as respects direct physical loss or damage to ROOF SURFACING caused by WIND or NAMED WINDSTORM as defined in the POLICY.

A.   In case of loss, the basis of adjustment for damage to ROOF SURFACING that has been in place on an insured building or structure for twenty (20) years or more will be ACTUAL CASH VALUE, at time and place of loss.

B.   The term "ROOF SURFACING" means: 1. the roofing material exposed to the weather; 2. the underlayment applied for moisture protection; 3. all materials used in securing the roof surfacing all flashings required in the replacement of the roof surfacing.

C.   This COMPANY shall not pay for COSMETIC DAMAGE to ROOF SURFACING caused by WIND or NAMED WINDSTORM regardless of age. For the purpose of this endorsement, the term "COSMETIC DAMAGE" means marring, pitting or other superficial damage that altered the appearance of the ROOF SURFACING, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the COSMETIC DAMAGE occurred.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ___28____ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# SCHEDULE OF LOCATIONS ENDORSEMENT

It is hereby understood and agreed that the following LOCATION(S) is (are) insured under this POLICY, subject to all terms, conditions, exclusions, limitations and stipulations of this POLICY.

|  **Location No.**  |  **Location**  |  **Values**  |
|---|---|---|

**As per Schedule of Locations on file with the Company as of policy inception.**

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

PR 056 (09/14)                                                                 Page 1 of 1

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 102 of 126

Endorsement No. ___29___ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# SERVICE OF PROCESS CLAUSE ENDORSEMENT

In the event of failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon counsel at:

**Legal Department**
**Starr Surplus Lines Insurance Company**
**399 Park Avenue**
**New York, NY 10022**

or his or her representative, and that in any suit instituted against the Insurer upon this policy, the Insurer will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ____30____ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# SPOILAGE ENDORSEMENT

Subject to the all terms, conditions, limitations, exclusions and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover direct physical loss or damage to property insured when such loss is due to spoilage from lack of power, light, heat, steam, or refrigeration as a result of a peril insured against.

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed **$The Sublimit specified in the Declarations**.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ___31___ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# TEMPORARY REMOVAL OF PROPERTY ENDORSEMENT

**A.** **COVERAGE:**

Subject to all terms, conditions, exclusions, limitations and stipulations of the Policy to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover personal property of the Insured while removed from an INSURED LOCATION for repairs, for servicing, or to avoid threatened physical loss or damage by a peril insured against. This POLICY covers such property while at the premises to which such property has been moved; and for direct physical loss or damage as provided at the INSURED LOCATION from which such property was removed.

**B.** **LIMIT OF LIABILITY:**

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed **$The Sublimit specified in the Declarations**.

**C.** **ADDITIONAL EXCLUSIONS**:

In addition to the exclusions elsewhere in the POLICY, the following exclusions apply to this Endorsement:

This Endorsement shall not apply to personal property:

1.        removed from an INSURED LOCATION for normal storage, or for processing or preparation for sale or delivery;

2.        covered elsewhere in this POLICY;

3.        covered by other insurance.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this Policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the Policy, except as herein above set forth.

Endorsement No. ____32____ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# TERRORISM EXCLUSION
# (FOR CERTIFIED ACTS OF TERRORISM UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED)

This Policy excludes loss, damage, cost or expense, arising directly or indirectly as a result of a "certified act of terrorism" as defined by the Terrorism Risk Insurance Act of 2002, as amended ("the Act"), and any revisions or amendments thereto, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For purposes of this endorsement and in compliance with the Act, "certified act of terrorism" shall mean an act that is certified by the Secretary of the Treasury in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the Act. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

However, if an act of terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire, this Company will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy to the lesser of the actual cash value of the property at the time of the loss, or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

With respect to fire resulting from any one or more acts of terrorism, this Company will not pay any amounts for which this Company is not responsible under the terms of the Act (including subsequent Congressional action pursuant to the Act) due to the application of Section 103 of the Act or any clause that results in a cap on our liability for payments for terrorism losses.

**THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABIITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.**

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 106 of 126

Endorsement No. ___33___    Additional Premium _____    Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# TOTAL TERRORISM EXCLUSION

This Endorsement only applies in the United States of America and its Territories and Possessions. Notwithstanding any provision to the contrary within this Policy or any endorsement thereto, it is agreed that this Policy excludes loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement, an "act of terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any action taken in controlling, preventing, suppressing, or in any way relating to any act of terrorism.

This endorsement also excludes loss, damage, cost,  or expense of whatsoever nature directly or indirectly caused by, resulting from,  or in connection with any action taken in controlling, preventing, suppressing,  or in any way relating to any act of terrorism.

However, if an act of terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any  State of the United States, the District of Columbia,  the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire,  this Company will pay for the loss or damage caused by that fire.  Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy to the lesser of the actual cash value of the property at the time of the loss, or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

With respect to fire resulting from any one or more "certified acts of terrorism" as defined under the Federal Terrorism Risk Insurance Act of 2002, as amended ("the Act"), this Company will not pay any amounts for which this Company is not responsible under the terms of the Act (including subsequent Congressional action pursuant to the Act) due to the application of Section 103 of the Act or any clause that results in a cap on our liability for payments for terrorism losses.

**THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABIITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE MAY BE REDUCED.**

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

**Form #61331 (1/15)**                                                                          **Page 1 of 1**

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 107 of 126

Endorsement No. _____34_____ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This POLICY does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ___35___ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# TRANSIT ENDORSEMENT

**A.   COVERAGE:**

Subject to all terms, conditions, exclusions, limitations and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover direct physical loss or damage by a peril insured against to personal property of the Insured or their interest therein while such property is in due course of transit within and between the forty eight (48) contiguous states of the United States of America, the District of Columbia and Alaska.

**B.   LIMIT OF LIABILITY AND DEDUCTIBLE AMOUNTS:**

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed the amount shown below and is subject to the following Deductible:

| Limit of Liability any one OCCURRENCE | **$The Sublimit specified in the Declarations.** | Deductible Amount any one OCCURRENCE | **$The Deductible specified in the Declarations.** |
|---|---|---|---|

**C.   ADDITIONAL PROPERTY EXCLUSIONS:**

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

This endorsement does not insure against loss or damage to:

1.   The conveyance used as the mode of transportation including any part or equipment thereof or containers;

2.   Property in export or import shipments;

3.   Property shipped by mail or parcel post from the time it passes into the custody of the United States Postal Service;

4.   Property while waterborne except while on ferries operated on the navigable waters of the Continental United States other than to and from Alaska; or,

5.   Samples or merchandise while in the care, custody, or control of the Named Insured's salesmen or sales representatives.

**D.   ADDITIONAL PERIL EXCLUSIONS:**

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 109 of 126

This Endorsement does not insure against loss or damage

1. with respect to vehicles operated by the Insured, by theft from a vehicle while unattended unless the portion of the vehicle containing the insured property is of entirely closed construction and, at the time of loss, the doors of which shall have been securely locked and the windows of which shall have been firmly closed, and the loss is a direct result of forcible entry of which there shall be visible evidence;

2. due to any fraudulent, dishonest or criminal act or omission by the Insured or a partner of the Insured; or by theft by any employee of the Insured, while working or otherwise, or by any person to whom the property is entrusted, but this exclusion does not apply to property in the custody of a carrier for hire;

3. by interruption of business, delay, loss of market or use, or indirect or consequential loss of any kind;

4. caused directly or indirectly by seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

## E.   BASIS OF LOSS PAYMENT:

1. Valuation of Property:

   The property shall be valued at the amount of invoice, including prepaid or advanced freight, if any, the profit or commission of the Insured as selling agent, and such other costs and charges as may have accrued and become legally due thereon since shipment.  In the absence of an invoice, the property shall be valued at its ACTUAL CASH VALUE at point of shipment.

## F.   ADDITIONAL CONDITIONS:

1. Benefit to Bailee:

   This insurance shall not inure directly or indirectly to the benefit of any carrier or other bailee.

2. All Subrogation provisions of this POLICY are superseded by the following:

   a. Impairment of Recovery Rights - Any act or agreement by the Insured before or after loss whereby any right of the Named Insured to recover in whole or in part for loss to property against any carrier for hire, bailee, or other party liable therefore, is released, impaired or lost, shall render the insurance null, but the COMPANY'S right to retain or recover the premium shall not be affected.  The Insured, however, may, without prejudice to this insurance, accept the ordinary bills of lading by carriers for hire.  The COMPANY is not liable for any loss which, without the written consent of the COMPANY, has been settled or compromised by the Insured.

b.   Right to Institute Legal Proceedings in Name of Insured -Upon payment of any loss or advancement or loan of money concerning the same, the Insured will at the request and expense of the COMPANY and through such counsel as the COMPANY may designate, make claim upon and institute legal proceedings against any carrier, bailee, or other parties believed to be liable for such loss, and will use all proper and reasonable means to recover the same.

**G.   DEBRIS REMOVAL EXCLUSION CLAUSE**:

Neither the Debris Removal Clause nor Pollution and Contamination Clean-up Endorsement of this POLICY shall extend to cover expense of removal of debris or POLLUTANTS resulting from loss or damage to property in transit.

This Endorsement does not increase any amounts or limits of insurance provided by this Policy.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ____36____ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# UNNAMED LOCATION COVERAGE ENDORSEMENT
## (Real and Personal Property)

Subject to all terms, conditions, exclusions, limitations and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover Real and Personal Property at Unnamed Locations owned, leased or rented by the Insured but not specified in the Schedule of Locations.

The COMPANY's total liability under this Endorsement in any one OCCURRENCE shall in no event exceed **$The Sublimit specified in the Declarations** at any one LOCATION.

This Endorsement shall not be construed as providing coverage at INSURED LOCATION(S) or LOCATIONS otherwise insured herein.


**ADDITIONAL EXCLUSIONS**:

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

THIS ENDORSEMENT DOES NOT INSURE AGAINST:

1.  loss or damage caused by or resulting from FLOOD and/or EARTH MOVEMENT;

2.  property while in transit or waterborne;

3.  property while on the premises of any exhibition, exposition, fair or trade show;

4.  TIME ELEMENT coverage for any unnamed location.


This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.




Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

PR 065 (02/12) Page 1 of 1

Endorsement No. _____37_____   Additional Premium _____   Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# VALUABLE PAPERS AND RECORDS ENDORSEMENT

**A.   COVERAGE:**

Subject to the all terms, conditions, limitations , exclusions and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover direct physical loss or damage, by a peril insured against, to VALUABLE PAPERS AND RECORDS while located at the PREMISES, it being a condition to any right of recovery hereunder that such VALUABLE PAPERS AND RECORDS shall be kept in appropriately protected receptacles at all times when the PREMISES are not open for business, except while such VALUABLE PAPERS AND RECORDS are in actual use.

This Endorsement applies while the VALUABLE PAPERS AND RECORDS are being conveyed outside the PREMISES and while temporarily within other PREMISES, except for storage.

This Endorsement applies while the VALUABLE PAPERS AND RECORDS are being removed to and while at a place of safety because of imminent danger of LOSS and while being returned from such place, provided the Insured gives written notice to the COMPANY of such removal within ten (10) days thereafter.

**B.   LIMIT OF LIABILITY:**

The COMPANY'S total liability in any one OCCURRENCE for LOSS under this Endorsement shall in no event exceed **$The Sublimit specified in the Declarations**.

**C.   ADDITIONAL EXCLUSIONS:**

In addition to the exclusions elsewhere in this POLICY, the following exclusions apply to this Endorsement:

This Endorsement does not apply:

a.      to LOSS directly resulting from errors or omissions in processing or copying unless a covered peril ensues and then only for direct loss caused by such covered peril.

b.      to LOSS of property held as samples or for sale or for delivery after sale.

c.      to LOSS of property not specifically declared and described, if such property cannot be replaced with other of like kind and quality;

**D.   CONDITIONS:**

The insured property may be owned by the Insured or held by the Insured in any capacity; provided the insurance applies only to the interest of the Insured in such property, including the Insured's liability to others, and does not apply to the interest of any other person or organization in any of said property unless included in the Insured's Proof of Loss.

PR 066 (07/13)                                                                                          Page 1 of 2

E.    **VALUATION:**

The limit of the COMPANY'S liability for LOSS shall not exceed the ACTUAL CASH VALUE of the property at time of LOSS nor what it would then cost to repair or replace the property with other of like kind and quality, nor the applicable limit of insurance stated in this Endorsement; provided, as respects property specifically described herein, the amount per article specified herein is the agreed value thereof for the purpose of this insurance.

The COMPANY may pay for the LOSS in MONEY or may repair or replace the property and may settle any claim for LOSS of the property either with the Insured or the owner thereof.  Any property so paid for or replaced shall become the property of the COMPANY.  The Insured or the COMPANY, upon recovery of any such property, shall give notice thereof as soon as practicable to the other and the Insured shall be entitled to the property upon reimbursing the COMPANY for the amount so paid or the cost of replacement.

Application of the insurance to property of more than one person shall not operate to increase the applicable limit of liability.

F.    **DEFINITIONS:**

The following terms whenever used in this Endorsement shall mean:

a.    VALUABLE PAPERS AND RECORDS:  Written, printed or otherwise inscribed document and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, but does not mean MONEY or SECURITIES;

b.    PREMISES:  The interior of that portion of the building at the LOCATION which is occupied by the Insured for the Business purposes stated herein;

c.    MONEY:  Currency, coins, bank notes and bullion; and travelers checks, register checks and money orders held for sale to the public;

d.    SECURITIES:  All negotiable and non-negotiable instruments or contracts representing either MONEY or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include MONEY.

e.    LOSS:  Includes damage.

This Endorsement is subject to the Deductibles specified in the Declarations does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. _____38_____ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

It is hereby understood and agreed that as respects coverage provided by the Transit Endorsement, the following applies:

# WAR AND TERRORISM EXCLUSION ENDORSEMENT

This endorsement applies outside the United States and its Territories and Possessions.

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

    (1)  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

    (2)  any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1) and/or (2) above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

**NMA2918**                                                                                    **Page 1 of 1**

Case 1:21-cv-05041 Document 1-1 Filed 06/08/21 Page 115 of 126

Endorsement No. ___39___ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# POLICY AMENDMENT ENDORSEMENT

It is hereby understood and agreed that this POLICY is amended as follows:

1. **COMMERCIAL PROPERTY CONDITIONS (CP00900788):** Part **H**, **POLICY PERIOD, COVERAGE TERRITORY**, Items 2. b. and c. are deleted.

2. **REPLACEMENT COST ENDORSEMENT (PR054 09/14)**, Item 6 is amended to read as follows:

    6. The COMPANY's liability for loss on a REPLACEMENT COST basis shall not exceed the lesser of the following amounts:

        a. the amount of the POLICY applicable to the damaged or destroyed property;

        b. the REPLACEMENT COST of the property or any part thereof with identical property or with like, kind and quality of such property on the same premises and intended for the same occupancy and use; or

        c. the amount actually and necessarily expended in repairing or replacing said property or any part thereof.

        **d. Items a. through c. above are subject to the OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT (PR044 02/12) provided herein.**

3. **PROPERTY COVERAGE FORM GENERAL CONDITIONS PR 002 (11/16), PROPERTY EXCLUDED, ITEMS** D is amended to read as follows:

    d. Land, including excavations, grading, or filling, land values, landscaping, roads, lawns plants, standing timber, crops, atmosphere, any water course or body of WATER whether above or below ground including sediments and/or beds of any body of WATER, or the restoration or replacement of any of the above;

4. **PROPERTY COVERAGE FORM GENERAL CONDITIONS (PR002 11/16):**

    a. Clause 6. <u>PERILS EXCLUDED</u>, Item o. is DELETED in its entirety

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ___40___ Additional Premium _____ Return Premium _____

Name of Insured _____ SFMB Management, LLC _____

# APPLICATION OF SUBLIMITS ENDORSEMENT

1.  **Application To Insured Interests**. Each sublimit stated in this POLICY applies as part of, and not in addition to, the overall POLICY Limit of Liability for an OCCURRENCE insured hereunder. Each sublimit is the maximum amount potentially recoverable from all insurance layers combined for all insured loss, damage, expense, TIME ELEMENT or other insured interest arising from or relating to that aspect of the OCCURRENCE, including but not limited to type of property, construction, geographic area, zone, location, or peril.

2.  **Application Within Perils**. If insured under this POLICY, any sublimit for EARTH MOVEMENT, FLOOD, WIND, or NAMED WINDSTORM is the maximum amount potentially recoverable from all insurance layers combined for all insured loss, damage, expense, TIME ELEMENT or other insured interest arising from or relating to such an OCCURRENCE. If FLOOD occurs in conjunction with WIND, NAMED WINDSTORM, or EARTH MOVEMENT, the FLOOD sublimit applies within and erodes the sublimit for WIND, NAMED WINDSTORM, or EARTH MOVEMENT.

    This endorsement takes precedence over and, if in conflict with any other wording in the POLICY bearing on the application of sublimits, replaces that wording.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Page 1 of 1

Endorsement No. ___41___ Additional Premium _____ Return Premium _____

Name of Insured _____SFMB Management, LLC_____

# ADDITIONAL INSUREDS AND LOSS PAYEES ENDORSEMENT

ADDITIONAL INSUREDS and LOSS PAYEES do not have the same rights and obligations under this POLICY as a Named Insured, or FIRST NAMED INSURED, and this provision does not confer any such rights or obligations on ADDITIONAL INSUREDS or LOSS PAYEES. The term "ADDITIONAL INSUREDS" and "LOSS PAYEES" means persons or entities, other than the FIRST NAMED INSURED or any other Named Insured, to whom money or insurance proceeds is to be paid for a covered loss under this POLICY. An ADDITIONAL INSURED and LOSS PAYEE is not a FIRST NAMED INSURED or a Named Insured.

This provision does not apply to contractual requirements to add persons or entities as Named Insureds or additional Named Insureds. Such Named Insureds or additional Named Insureds can only be added to this POLICY by separate written endorsement.

1.      If, pursuant to a written contract effective prior to the date of the loss in question, the Named Insured shown in the Declarations ("FIRST NAMED INSURED") is required to add a person or entity to this POLICY that was not already added:

        a.    as an ADDITIONAL INSURED, then this POLICY shall be deemed to have been endorsed accordingly, subject to all other terms, conditions, limits of liability and exclusions of this POLICY, as such person or entity's interest may appear;

        b.    as a LOSS PAYEE, then this POLICY shall be deemed to have been endorsed accordingly, subject to all other terms, conditions, limits of liability and exclusions of this POLICY and loss to covered property in which such LOSS PAYEE has an interest shall be adjusted with the Insured and payable jointly to the FIRST NAMED INSURED and such LOSS PAYEE;

        and no written endorsement to this POLICY shall be required in order for this provision to be effective as to such person or entity subject to compliance with the following.

2.      Pursuant to item 1. above and within ninety (90) business days after the COMPANY is notified of a loss which may be covered under this POLICY, the FIRST NAMED INSURED or its authorized representative shall:

        a.    provide the COMPANY with the identities of all persons or entities with interests in the property that is the subject of the loss; and

        b.    provide the COMPANY with copies of all contracts (predating the date of loss) requiring that such persons or entities be added to this POLICY as ADDITIONAL INSUREDS or LOSS PAYEES.

        c.    if the FIRST NAMED INSURED reasonably requires more than ninety (90) business days to produce the information required under paragraphs 2a     and 2b above, the COMPANY will provide extensions of time that are reasonable and appropriate for the circumstances, however all such requests must be made in writing to the COMPANY.

**Page 1 of 2**

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 118 of 126

3.      If the FIRST NAMED INSURED or its authorized representative fails to comply with item 2. above, the COMPANY shall assume that there are no such persons or entities, and:

      a.      the COMPANY shall not be liable for any failure to take such person or entity's interest into account in the adjustment or payment of any loss; and

      b.      The COMPANY can only accept copies of those contracts which require the addition of a person or entity as an ADDITIONAL INSURED or LOSS PAYEE that are directly related to the property which is the subject of the loss.  Providing the COMPANY with copies of any and all contracts requiring addition of a person or entity as an ADDITIONAL INSURED or LOSS PAYEE, or with bordereaux listings of all such persons and entities, at any time before, on, or after the date of a loss shall not constitute compliance with item 2. above.

4.      This ADDITIONAL INSUREDS and LOSS PAYEES provision does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the COMPANY from providing insurance to such persons or entities, including, but not limited to, the payment of claims.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

Endorsement No. ___42___ Additional Premium _____ Return Premium _____

Name of Insured _____Smugglers Enterprises Inc_____

# SINKHOLE LOSS ENDORSEMENT

**A.    INTEREST AND PROPERTY INSURED:**

Subject to all terms, conditions and stipulations of the POLICY to which this Endorsement is attached, not in conflict herewith, this POLICY is extended to cover SINKHOLE LOSS as defined herein, at an INSURED LOCATION in the State of Florida

**B.    LIMIT OF LIABILITY:**

The COMPANY's total liability in any one OCCURRENCE under this Endorsement shall in no event exceed **$The Sublimit specified in the Declarations**.

**C.    SINKHOLE LOSS**  meaning loss or damage to covered property when "structural damage" to the building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the building, only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

1.    We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

2.    Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your Sinkhole Loss.  After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable sublimit of Liability specified in the Declarations, we must either complete the recommended repairs or pay the applicable sublimit of Liability upon such determination.  If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable sublimit of liability as stated in the Declarations upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable sublimit of liability specified in the Declarations on the affected building.

**Page 1 of 3**

Case 1:21-cv-05041   Document 1-1   Filed 06/08/21   Page 120 of 126

The stabilization and all other repairs to the covered property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;
2. The claim is involved with the neutral evaluation process;
3. The claim is in litigation; or
4. The claim is under appraisal or mediation.

**D.**  Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or
2. Earthquake.

**E**.  With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential properties, this program applies instead of the mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services.  The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

The Participation in the neutral evaluation program does not change your right to file suit  against us in accordance with the Legal Action Against Us Condition in this policy, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**F.**  The following provision is added to item m. Requirements in Case Loss Occurs under Clause 12. CONDITIONS

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**G.**  The following definitions are added with respect to the coverage provided under this endorsement:

**1.** "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

   b.  Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

   c.  Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

   d.  Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

   e.  Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**H.** If we deny your claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**I.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**J.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**K.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

This Endorsement is subject to the Deductibles specified in the Declarations and does not increase any amounts or limits of insurance provided by this POLICY.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limitations, exclusions or conditions of the POLICY, except as herein above set forth.

# APPENDIX A – NEW MADRID SEISMIC ZONE

**Arkansas, counties of:**
Arkansas, Ashley, Chicot, Clay, Craighead, Crittenden, Cross, Desha, Drew, Fulton, Grant, Greene, Independence, Izard, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Pulaski, Randolph, Saline, Sharp, St. Francis, White, Woodruff

**Illinois, counties of:**
Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Morgan, Perry, Pike, Pope, Pulaski, Randolph, Richland, Saline, Sangamon, Scott, Shelby, St. Clair, Union, Wabash, Washington, Wayne, White, Williamson

**Indiana, counties of:**
Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, Warrick

**Kentucky, counties of:**
Ballard, Breckinridge, Butler, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Logan, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, Webster

**Mississippi, counties of:**
Alcorn, Benton, Bolivar, Calhoun, Carroll, Chickasaw, Choctaw, Clay, Coahoma, De Soto, Grenada, Holmes, Humphreys, Issaquena, Itawamba, Lafayette, Lee, Leflore, Lowndes, Marshall, Monroe, Montgomery, Oktibbeha, Panola, Pontotoc, Prentiss, Quitman, Sharkey, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Tunica, Union, Warren, Washington, Webster, Yalobusha, Yazoo

**Missouri, counties of:**
Audrain, Bollinger, Butler, Callaway, Cape Girardeau, Carter, Cole, Crawford, Dent, Dunklin, Franklin, Gasconade, Howell, Iron, Jefferson, Lincoln, Madison, Maries, Marion, Miller, Mississippi, Montgomery, New Madrid, Oregon, Osage, Pemiscot, Perry, Phelps, Pike, Pulaski, Ralls, Reynolds, Ripley, Scott, Shannon, St. Charles, St. Francois, St. Louis, St. Louis City, Ste. Genevieve, Stoddard, Texas, Warren, Washington, Wayne

**Tennessee, counties of:**
Benton, Carroll, Cheatham, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Lawrence, Lewis, Madison, McNairy, Montgomery, Obion, Perry, Robertson, Shelby, Stewart, Tipton, Wayne, Weakley

Case 1:21-cv-05041 Document 1-1 Filed 06/08/21 Page 123 of 126

## APPENDIX B – PACIFIC NORTHWEST SEISMIC ZONES

**Oregon, counties of:**
Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Jackson, Josephine, Klamath, lake, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill

**Washington, counties of:**
Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Snohomish, Thurston, Wahkiakum, Whatcom

**British Columbia (includes Vancouver Island):**
South of $50^\circ$ N latitude and west of $120^\circ$ W longitude

# APPENDIX C -   DEFINITION OF TIER 1 WIND COUNTIES

**Alabama Counties of:**

Baldwin
Mobile

**FLORIDA:**

Entire State

**Georgia – Counties of:**

| | |
|---|---|
| Bryan | Glynn |
| Camden | Liberty |
| Chatham | McIntosh |

**Hawaii:**

Entire State

**Louisiana Parishes:**

| | |
|---|---|
| Assumption | St. Charles |
| Calcasieu | St. James |
| Cameron | St. John the Baptist |
| Iberia | St. Martin |
| Jefferson | St. Mary |
| LaFourche | St. Tammany |
| Orleans | Terrebonne |
| Plaquemines | Vermilion |
| St. Bernard | |

**Mississippi – Counties of:**

Hancock
Harrison
Jackson

**North Carolina – Counties of:**

| | |
|---|---|
| Beaufort | Jones |
| Bertie | New Hanover |
| Brunswick | Onslow |
| Camden | Pamlico |
| Carteret | Pasquotank |
| Chowan | Pender |
| Craven | Perquimans |
| Currituck | Tyrrell |
| Dare | Washington |
| Gates | |
| Hyde | |

**South Carolina – Counties of:**

| | |
|---|---|
| Beaufort | Georgetown |
| Berkeley | Horry |
| Charleston | Jasper |
| Colleton | |

**Texas – Counties of:**

| | |
|---|---|
| Aransas | Kenedy |
| Brazoria | Kleberg |
| Calhoun | Matagorda |
| Cameron | Nueces |
| Chambers | Orange |
| Galveston | Refugio |
| Harris* | San Patricio |
| Jefferson | Willacy |

*Areas located wholly or partially within Designated Catastrophe Areas as defined by the Texas Department of Insurance.

**Virginia Counties;**     **Independent Cities:**

| | |
|---|---|
| Accomack | Chesapeake |
| Gloucester | Hampton |
| Isle of Wright | Newport News |
| James City | Norfolk |
| Lancaster | Poquoson |
| Mathews | Portsmouth |
| Middlesex | Virginia Beach |
| Northampton | Williamsburg |
| Northumberland | |
| Surry | |
| York | |

**Puerto Rico:**

Entire Island

Case 1:21-cv-05041 Document 1-1 Filed 06/08/21 Page 126 of 126



**TO OUR BROKERS/AGENTS**


**<u>IMPORTANT</u> <u>NOTICE</u> - TO BE KEPT WITH POLICY**


**<u>WHAT TO DO WHEN A LOSS OCCURS</u>**


1. Report as soon as practicable, every incident, loss or damage (LOSS NOTICES) which may become a claim to:


   <u>StarrPoolClaims@starrcompanies.com</u>


2. Starr Specialty Lines Insurance Agency, LLC claims **<u>CANNOT</u>** be processed through any other facility and must be reported as indicated above.


3. Adjusters can **<u>ONLY</u>** be assigned by Starr Specialty Lines Insurance Agency, LLC Property Claims Department.